## CHAFFEE COUNTY *v.* POTTER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 103.  Submitted November 24, 1891. — Decided January 4, 1892.

A statement, in the bond of a municipal corporation, that it is issued under the provisions of the act of the general assembly of Colorado of February 21, 1881, and in conformity with its provisions; that all the requirements of law have been fully complied with; that the total amount of the issue does not exceed the limits prescribed by the constitution of that State; and that the issue of the bonds had been authorized by a vote of a majority of the duly qualified electors of the county, voting on the question at a general election duly held, estops the county, in an action by an innocent holder for value, to recover on coupons of such bonds, from denying the truth of these recitals.

When there is an express recital upon the face of a municipal bond that the limit of issue prescribed by the state constitution has not been passed, and the bonds themselves do not show that it had, the holder is not bound to look further.

*Lake County* v. *Graham*, 130 U. S. 674, and *Dixon County* v. *Field*, 111 U. S. 83, affirmed and distinguished from this case.

THE case is stated in the opinion.

Mr. *Thomas Macon*, for plaintiffs in error, cited: *McClure* v. *Township of Oxford*, 94 U. S. 429; *Town of Coloma* v.

*Eaves,* 92 U. S. 484; *Buchanan* v. *Litchfield,* 102 U. S. 278; *Northern Bank* v. *Porter Township,* 110 U. S. 608; *Dixon County* v. *Field,* 111 U. S. 83; *Lake County* v. *Graham,* 130 U. S. 674.

*Mr. Willard Teller,* for defendant in error, cited: *Knox County* v. *Aspinwall,* 21 How. 539; *Bissell* v. *Jeffersonville,* 24 How. 287; *Mercer County* v. *Hacket,* 1 Wall. 83; *Gelpcke* v. *Dubuque,* 1 Wall. 175; *Meyer* v. *Muscatine,* 1 Wall. 384; *Van Hostrup* v. *Madison City,* 1 Wall. 291; *Supervisors* v. *Schenck,* 5 Wall. 772; *Grand Chute* v. *Winegar,* 15 Wall. 355; *St. Joseph Township* v. *Rogers,* 16 Wall. 644; *Coloma* v. *Eaves,* 92 U. S. 484; *Venice* v. *Murdock,* 92 U. S. 494; *Moultrie County* v. *Rockingham Bank,* 92 U. S. 631; *Marcy* v. *Oswego,* 92 U. S. 637; *County of Henry* v. *Nicolay,* 95 U. S. 619; *Township of Rock Creek* v. *Strong,* 96 U. S. 271; *San Antonio* v. *Mehaffy,* 96 U. S. 312; *Cromwell* v. *County of Sac,* 96 U. S. 51; *Wilson* v. *Salamanca,* 99 U. S. 499; *County of Macon* v. *Shores,* 97 U. S. 272; *County of Daviess* v. *Huidekoper,* 98 U. S. 98; *Hackett* v. *Ottawa,* 99 U. S. 86; *Orleans* v. *Platt,* 99 U. S. 676; *Lyons* v. *Munson,* 99 U. S. 684; *Block* v. *Commissioners,* 99 U. S. 687; *Buchanan* v. *Litchfield,* 102 U. S. 278; *Walnut* v. *Wade,* 103 U. S. 683; *Harter* v. *Kernochan,* 103 U. S. 562; *Pana* v. *Bowler,* 107 U. S. 529; *Kirkbride* v. *La Fayette,* 108 U. S. 208; *Dallas County* v. *McKenzie,* 110 U. S. 686; *Dixon* v. *Field,* 111 U. S. 83; *Northern Bank* v. *Porter Township,* 110 U. S. 608; *Oregon* v. *Jennings,* 119 U. S. 74; *Comanche County* v. *Lewis,* 133 U. S. 198; *Lake County* v. *Graham,* 130 U. S. 674.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was an action by Andrew Potter, a citizen of Massachusetts, against the board of county commissioners of Chaffee County, Colorado, on a large number of interest-bearing coupons attached to certain bonds issued by that county, in 1882, for the purpose of funding its floating indebtedness.

The following is a copy of one of the bonds and coupons:

" No. ——.                                                   $1000.

" United States of America, County of Chaffee, State of Colorado.

" Funding Bond.

" (Series A.)

" The County of Chaffee, in the State of Colorado, acknowledges itself indebted, and promises to pay to —— —— or bearer, one thousand dollars, lawful money of the United States, for value received, redeemable at the pleasure of said county after ten years, and absolutely due and payable twenty years from the date hereof, at the office of the treasurer of said county, in the town of Buena Vista, with interest thereon at the rate of eight per cent per annum, payable semi-annually on the first day of March, and the first day of September in each year, at the office of the county treasurer aforesaid, or at the banking-house of Kountze Brothers, in the city of New York, at the option of the holder, upon the presentation and surrender of the annexed coupons as they severally become due.

" This bond is issued by the board of county commissioners of said Chaffee county, in exchange at par for valid floating indebtedness of the said county, outstanding prior to August 31, 1882, under and by virtue of, and in full conformity with, the provisions of an act of the general assembly of the State of Colorado, entitled ' An act to enable the several counties of the state to fund their floating indebtedness,' approved February 21, 1881, and it is hereby certified that all the requirements of law have been fully complied with by the proper officers in the issuing of this bond. It is further certified that the total amount of this issue does not exceed the limit prescribed by the constitution of the State of Colorado, and that this issue of bonds has been authorized by a vote of a majority of the duly qualified electors of the said county of Chaffee, voting on the question at a general election duly held in said county, on the seventh day of November, A.D. 1882.

" The bonds of this issue are comprised in three series designated ' A,' ' B,' and ' C,' respectively; the bonds of series ' A '

being for the sum of one thousand dollars each, those of series 'B' for the sum of five hundred dollars each, and those of series 'C' for the sum of one hundred dollars each. This bond is one of series 'A.'

"The faith and credit of the county of Chaffee are hereby pledged for the punctual payment of the principal and interest of this bond.

"In testimony whereof, the board of county·commissioners of the said county of Chaffee have caused this bond to be signed by their chairman, countersigned by the county treasurer and attested by the county clerk under the seal of the county, this first day of December, A.D. 1882.

———— ————,
" *Chairman Board of County Commissioners.*
"Attest: ——— ———, *County Clerk.*
" [COUNTY SEAL.]
"Countersigned: ——— ———, *County Treasurer.*"

" $—.                    (Coupon.)                    $—.
" The County of Chaffee, in the State of Colorado, will pay the bearer — dollars at the office of the county treasurer, in the town of Buena Vista, or at the banking-house of Kountz Brothers, in the city of New York, on the first day of ———, being six months' interest on funding bond
"No. —, Series —.        E. B. JONES, *County Treasurer.*"

The plaintiff, as the holder of a large number of the coupons of each series, alleged in his declaration that all the proceedings required by the statutes of the State to be taken in the matter of the issue and registration of the bonds had been taken before the bonds were·put on the market, that the bonds were therefore legal in all respects as valid obligations of the county, and that, as the *bona fide* holder for value of the interest coupons, he had presented them for payment at the place required and payment had been refused. Wherefore he prayed judgment for the amount of said coupons, with interest, in all, $9648.

The defences set up in the answer were:. That the bonds had not been authorized by a vote of the qualified voters of the county, and no bonds had been authorized to be exchanged for the warrants of the county, and the board, therefore, never had any jurisdiction to issue them; that the bonds, and each of them, were issued in violation of § 6, art. 11, of the constitution of the State, and the debt which they assumed to fund was contracted in violation of said provision of the constitution; and that the bonds were issued by the board of county commissioners without any consideration valid in law, as plaintiff well knew when he received the coupons sued on.

A demurrer to the answer on the ground that it was not a sufficient defence to the action, was sustained by the Circuit Court, and, the defendants electing to stand by their pleading, judgment was entered in favor of the plaintiff for the full amount of his claim, with interest. 33 Fed. Rep. 614. This writ of error is prosecuted to review that judgment.

The ground upon which the Circuit Court based its decision and judgment was that the county should be estopped, by the recitals in the bonds, from pleading the defences set up in the answer.

The act of the legislature, under the authority of which the bonds were issued, is set out in the margin.[1] It is the same

---

[1] SECTION 1. It shall be the duty of the county commissioners of any county having a floating indebtedness exceeding ten thousand dollars, upon the petition of fifty of the electors of said counties [county,] who shall have paid taxes upon property assessed to them in said county in the preceding year, to publish, for the period of thirty days, in a newspaper published within said county, a notice requesting the holders of the warrants of such county to submit, in writing, to the board of county commissioners, within thirty days from date of the first publication of such notice, a statement of the amount of the warrants of such county, which they will exchange at par, and accrued interest for the bonds of such county, to be issued under the provisions of this act, taking such bonds at par. It shall be the duty of such board of county commissioners, at the next general election occurring after the expiration of thirty days from the date of the first publication of the notice aforementioned, upon the petition of fifty of the electors of such county who shall have paid taxes upon property assessed to them in said county in the preceding year, to submit to the vote of the qualified electors of such county who shall have paid taxes on prop-

act under which certain bonds were issued by Lake County, Colorado, which bonds were under consideration in *Lake*

---

erty assessed to them in said county in the preceding year, the question whether the board of county commissioners shall issue bonds of such county, under the provisions of this act, in exchange, at par, for the warrants of such county issued prior to the date of the first publication of the aforesaid notice; or they may submit such question at a special election, which they are hereby empowered to call for that purpose, at any time after the expiration of thirty days from the date of the first publication of the notice aforementioned, on the petition of fifty qualified electors as aforesaid; and they shall publish, for the period of at least thirty days immediately preceding such general or special election, in some newspaper published within such county, a notice that such question will be submitted to the duly qualified electors as aforesaid, at such election. The county treasurer of such county shall make out and cause to be delivered to the judges of election, in each election precinct in the county, prior to the said election, a certified list of the taxpayers in such county who shall have paid taxes upon property assessed to them in such county in the preceding year; and no person shall vote upon the question of the funding of the county indebtedness unless his name shall appear upon such list, nor unless he shall have paid all county taxes assessed against him in such county in the preceding year. If a majority of the votes lawfully cast upon the question of such funding of the floating county indebtedness shall be for the funding of such indebtedness, the board of county commissioners may issue to any person or corporation holding any county warrant or warrants issued prior to the date of the first publication of the aforementioned notice coupon bonds of such county in exchange therefor, at par. No bonds shall be issued of less denomination than one hundred dollars, and if issued for a greater amount, then for some multiple of that sum, and the rate of interest shall not exceed eight per cent per annum. The interest to be paid semi-annually, at the office of the county treasurer, or in the city of New York, at the option of the holders thereof. Such bonds to be payable at the pleasure of the county, after ten years from the date of their issuance, but absolutely due and payable twenty years after date of issue. The whole amount of bonds issued under this act shall not exceed the sum of the county indebtedness at the date of the first publication of the aforementioned notice, and the amount shall be determined by the county commissioners, and a certificate made of the same, and made a part of the records of the county; and any bond issued in excess of said sum shall be null and void; and all bonds issued under the provisions of this act shall be registered in the office of the state auditor, to whom a fee of ten cents shall be paid for recording each bond.

SEC. 2. All bonds which may be issued under the provisions of this act shall be signed by the chairman of the board of county commissioners, countersigned by the county treasurer of the county, and attested by the clerk of said county, and bear the seal of the county upon each bond, and

*County* v. *Graham*, 130 U. S. 674. The bonds in that case were quite similar to those now under consideration, differing

---

shall be numbered and registered in a book kept for that purpose by the county treasurer, in the order in which they are issued; each bond shall state upon its face the amount for which the same is issued, to whom issued and the date of its issuance.

SEC. 3. The county commissioners shall be authorized to prescribe the form of such bonds and the coupons thereto, and to provide for the half-yearly interest accruing on such bonds actually issued and delivered; they shall levy annually a sufficient tax to fully discharge such interest, and for the ultimate redemption of such bonds they shall levy annually, after nine years from the date of such issuance, such tax upon all the taxable property in their county as shall create a yearly fund equal to ten (10) per cent of the whole amount of such bonds issued, which fund shall be called the redemption fund. And all taxes for interest on and for the redemption of such bonds shall be paid in cash only, and shall be kept by the county treasurer as a special fund, to be used in payment of interest on and for the redemption of such bonds only; and such taxes shall be levied and collected as other taxes.

SEC. 4. It shall be the duty of the county treasurer, when there are sufficient funds in his hands to the credit of the redemption fund, to pay in full the principal and interest of any such bonds, immediately to call in and pay as many of such bonds, and accrued interest thereon, as the funds on hand will liquidate, as hereinbefore provided. Such bond or bonds shall be paid in the order of their number; and when any bonds or coupons issued under this act are taken up, it shall be the duty of such treasurer to certify his action to the board of county commissioners, who shall cancel the same, so that they can be plainly identified, and cause a record to be made of the same; and when it is desired to redeem any of such bonds, the county treasurer shall cause to be published for thirty days, in some newspaper at or nearest the county seat of the county, and in a newspaper published in the city of Denver, a notice that certain county bonds by numbers and amounts will be paid upon presentation, and at the expiration of thirty days such bonds shall cease to bear interest.

SEC. 5. All persons voting on the question as hereinbefore provided shall vote by separate ballot, which shall be deposited in a box to be used for that purpose only, and on which ballot shall be printed the words, "For funding county debt," or "Against funding county debt;" and if, upon canvassing to [the] vote (which shall be canvassed in the same manner as the vote for county officers), it shall appear that a majority of all votes cast upon the question so submitted are for funding the county debt, then the county commissioners shall be authorized to carry out the provisions of this act, and the canvassing board shall certify the vote, and it shall be made part of the county records. The judges of election shall make and certify to the clerk of the county a separate list of the names of the electors voting upon the

only, as regards their recitals, in this, that the bonds here contain the additional recital that "the total amount of this issue does not exceed the limit prescribed by the constitution of the State of Colorado," and do not show upon their face, as did those in that case, how many bonds were issued, or how large each series was.

The provision of the constitution of 1876, referred to, both in this case and in that, (art. 11, sec. 6,) is as follows:

"No county shall contract any debt by loan in any form, except for the purpose of erecting necessary public buildings, making or repairing public roads and bridges; and such indebtedness contracted in any one year shall not exceed the rates upon the taxable property in such county following, to wit : counties in which the assessed valuation of taxable property. shall exceed five millions of dollars, one dollar and fifty cents on each thousand dollars thereof; counties in which such valuation shall be less than five millions of dollars, three dollars on each thousand dollars thereof; and the aggregate amount of indebtedness of any county, for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above herein limited, unless when, in manner provided by law, the question of incurring such debt shall, at a general election, be submitted to such of the qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed to them in such county, and a majority of those voting thereon shall vote in favor of incurring the debt; but the bonds, if any be issued therefor, shall not run less than ten years; and the aggregate amount of debt so contracted shall not at any time exceed twice the rate upon the valuation last herein mentioned ; *Provided*, That this section shall not apply to counties having a valuation of less than one million of dollars."

We held in that case that the county was not estopped from

question of the funding of the county indebtedness in the order in which the ballot of the elector so voting is received, and each ballot shall be numbered in the order in which it is received, and the number recorded and [on] the said list of voters opposite the name of the voter who presents the ballot. — Laws 1881, p. 85, §§ 1, 2, 3, 4 and 5.

pleading the constitutional limitation, because there was no recital in the bonds in regard to it, and because, also, the bonds showing upon their face that they were issued to the amount of $500,000, the purchaser, having that data before him, was bound to ascertain from the records the total assessed valuation of the taxable property of the county, and determine for himself, by a simple arithmetical calculation, whether the issue was in harmony with the constitution; and that the bonds, having been issued in violation of that provision of the constitution, were not valid obligations of the county. Our decision was based largely upon the ruling of this court in *Dixon County* v. *Field*, 111 U. S. 83. To the views expressed in that case we still adhere; and the only question for us now to consider, therefore, is: Do the additional recital in these bonds, above set out, and the absence from their face of anything showing the total number issued of each series, and the total amount in all, estop the county from pleading the constitutional limitation?

In our opinion these two features are of vital importance in distinguishing this case from *Lake County* v. *Graham* and *Dixon County* v. *Field*, and are sufficient to operate as an estoppel against the county. Of course, the purchaser of bonds in open market was bound to take notice of the constitutional limitation on the county with respect to indebtedness which it might incur. But when, upon the face of the bonds, there was an express recital that that limitation had not been passed, and the bonds themselves did not show that it had, he was bound to look no further. An examination of any particular bond would not disclose, as it would in the *Lake County Case*, and in *Dixon County* v. *Field*, that, as a matter of fact, the constitutional limitation had been exceeded, in the issue of the series of bonds. The purchaser might even know, indeed it may be admitted that he would be required to know, the assessed valuation of the taxable property of the county, and yet he could not ascertain by reference to one of the bonds and the assessment roll whether the county had exceeded its power, under the constitution, in the premises. True, if a purchaser had seen the whole issue of each series of bonds and

then compared it with the assessment roll, he might have been able to discover whether the issue exceeded the amount of indebtedness limited by the constitution. But that is not the test to apply to a transaction of this nature. It is not supposed that any one person would purchase all of the bonds at one time, as that is not the usual course of business of this kind. The test is — What does each individual bond disclose? If the face of one of the bonds had disclosed that, as a matter of fact, the recital in it, with respect to the constitutional limitation, was false, of course the county would not be bound by that recital, and would not be estopped from pleading the invalidity of the bonds in this particular. Such was the case in Lake County v. Graham and Dixon County v. Field. But that is not this case. Here, by virtue of the statute under which the bonds were issued, the county commissioners were to determine the amount to be issued, which was not to exceed the total amount of the indebtedness at the date of the first publication of the notice requesting the holders of county warrants to exchange their warrants for bonds, at par. The statute, in terms, gave to the commissioners the determination of a fact, that is, whether the issue of bonds was in accordance with the constitution of the State and the statute under which they were issued, and required them to spread a certificate of that determination upon the records of the county. The recital in the bond to the effect that such determination has been made, and that the constitutional limitation had not been exceeded in the issue of the bonds, taken in connection with the fact that the bonds themselves did not show such recital to be untrue, under the law, estops the county from saying that it is untrue. Town of Coloma v. Eaves, 92 U. S. 484; Town of Venice v. Murdock, 92 U. S. 494; Marcy v. Township of Oswego, 92 U. S. 637; Wilson v. Salamanca, 99 U. S. 499; Buchanan v. Litchfield, 102 U. S. 278; Northern Bank v. Porter Township, 110 U. S. 608.

The rule respecting the binding force of recitals in bonds is well stated in Town of Coloma v. Eaves, as follows: " Where legislative authority has been given to a municipality, or to its officers, to subscribe for the stock of a railroad company, and

to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal." 92 U. S. 491.

In *Buchanan* v. *Litchfield*, while holding that the bonds were in excess of the amount that could be legally issued, and that the recitals in the bonds were not sufficient to estop the municipality from pleading a want of authority to issue them, the court say: "As, therefore, neither the constitution nor the statute prescribed any rule or test by which persons contracting with municipal corporations should ascertain the extent of their 'existing indebtedness,' it would seem that if the bonds in question had contained recitals which, upon any fair construction, amounted to a representation on the part of the constituted authorities of the city that the requirements of the constitution were met — that is, that the city's indebtedness, increased by the amount of the bonds in question, was within the constitutional limit — then the city, under the decisions of this court, might have been estopped from disputing the truth of such representations as against a *bona fide* holder of its bonds. The case might then, perhaps, have been brought within the rule announced by this court in *Town of Coloma* v. *Eaves*." And again: "Had the bonds made the additional recital that they were issued in accordance with the constitution, or had the ordinance stated, in any form, that the proposed indebtedness was within the constitutional limit, or had the statute restricted the exercise of the authority therein conferred to those municipal corporations whose indebtedness did not, at the time, exceed the constitutional limit, there would have been ground for holding that the city could not, as against the plaintiff, dispute the fair inference to be drawn from such recital or statement, as to the extent of its existing indebtedness." 102 U. S. 290, 292.

We think this case comes fairly within the principles of those just cited; and that it is not governed by *Dixon County* v. *Field* and *Lake County* v. *Graham*, but is distinguishable from them, in the essential particulars above noted.

*Judgment affirmed.*

MR. JUSTICE GRAY dissented.