## SUTLIFF v. LAKE COUNTY COMMISSIONERS.

CERTIFICATE FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 1085. Submitted December 12, 1892. — Decided January 9, 1893.

Where the constitution and a statute of a State forbid any county to issue bonds to such an amount as will make its aggregate indebtedness exceed a certain proportion of the assessed valuation of taxable property in the county; and the statute requires the county commissioners to publish, and to enter on the public records of the county, semi-annual statements showing the whole amount of the county debt; a purchaser, for value and before maturity, of a bond issued in excess of the constitutional and statutory limit, is charged with the duty of examining the record of indebtedness; and the county is not estopped, by a recital in the bond that all the provisions of the statute have been complied with, to prove, by the record of the assessment and the indebtedness, that the bonds were issued in violation of the constitution.

THIS was an action brought in the Circuit Court of the United States for the District of Colorado by a citizen of

Connecticut against the county of Lake, a municipal corporation of Colorado, upon coupons for interest of six bonds for $500 each, part of a series of ten bonds, issued by the county on July 1, 1881, payable to bearer in twenty years, and redeemable at the pleasure of the county after ten years, and containing this recital:

"This bond is one of a series of five thousand dollars, which the board of county commissioners of said county have issued for the purpose of constructing roads and bridges, by virtue of and in compliance with a vote of a majority of the qualified voters of said county, at an election duly held on the 7th day of October, A.D. 1879, and under and by virtue of and in compliance with an act of the general assembly of the State of Colorado, entitled 'An act concerning counties, county officers and county government, and repealing laws on these subjects,' approved March 24, A.D. 1877, and it is hereby certified that all the provisions of said act have been fully complied with by the proper officers in the issuing of this bond."

One defence was that the bonds were illegal and void, because they increased the indebtedness of the county to an amount in excess of the limit prescribed by art. 11, sect. 6, of the constitution of Colorado, which is copied in the margin.[1]

On March 24, 1877, the legislature of Colorado passed an act, entitled "An act concerning counties, county officers and county government, and repealing laws on these subjects,"

---

[1] No county shall contract any debt by loan in any form, except for the purpose of erecting necessary public buildings, making or repairing public roads and bridges; and such indebtedness contracted in any one year shall not exceed the rates upon the taxable property in such county following, to wit: Counties in which the assessed valuation of taxable property shall exceed five millions of dollars, one dollar and fifty cents on each thousand dollars thereof; counties in which such valuation shall be less than five millions of dollars, three dollars on each thousand dollars thereof. And the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above herein limited, unless, when, in manner provided by law, the question of incurring such debt shall, at a general election, be submitted to such of the qualified electors of such county as in the year last preceding such election shall have paid a tax upon property assessed to them in such county, and a majority of those

(General Laws of 1877, p. 218,) the material provisions of which are also copied in the margin.[1]

---

voting thereon shall vote in favor of incurring the debt; but the bonds, if any be issued therefor, shall not run less than ten years, and the aggregate amount of debt so contracted shall not at any time exceed twice the rate upon the valuation last herein mentioned: Provided, that this section shall not apply to counties having a valuation of less than one million of dollars.

[1] SEC. 21. When the county commissioners of any county shall deem it necessary to create an indebtedness for the purpose of erecting necessary public buildings, making or repairing public roads or bridges, they may, by an order entered of record, specifying the amount required and the object for which such debt is created, submit the question to a vote of the people at a general election; and they shall cause to be posted a notice of such order in some conspicuous place in each voting precinct in the county, for at least thirty days preceding the election; and all persons voting on that question shall vote by separate ballot, whereon is placed the words "for county indebtedness," or "against county indebtedness;" such ballots to be deposited in a box provided by the county commissioners for that purpose, and no person shall vote on the question of indebtedness unless he shall have the necessary qualifications of an elector as provided by law, and shall have paid a tax upon property assessed to him in such county for the year immediately preceding; and if, upon canvassing the vote, (which shall be canvassed in the same manner as the vote for county officers,) it shall appear that a majority of all the votes cast are for county indebtedness, then the county commissioners shall be authorized to contract the debt in the name of the county: Provided, that the aggregate amount of indebtedness of any county, exclusive of debts contracted prior to July 1, 1876, in which the assessed valuation of property shall exceed one million of dollars, for all purposes, shall not be in excess of the following ratio, to wit: Counties in which the assessed valuation of property shall exceed five millions of dollars, six dollars on each thousand dollars thereof; counties in which the assessed valuation of property shall be less than five millions and exceed one million of dollars, twelve dollars on each thousand dollars thereof.

SEC. 30. It shall be the duty of the board of county commissioners of each county to make out semi-annual statements at the regular sessions in January and July, at which times they shall have such statements published in some weekly newspaper published in the county, if there be such published; and if there be no newspaper published in the county, such commissioners shall cause such statement to be posted in three conspicuous places in said county, one of which shall be the court-house door; and such statement shall show the amount of debt owing by their county, in what the debt consists, what payments, if any, have been made upon the same, the rate of interest that such debts are drawing; also a detailed account of the receipts and expenditures of the county for the preceding months, in which shall

The Circuit Court gave judgment for the defendant; and the plaintiff took the case by writ of error to the Circuit Court of Appeals for the Eighth Circuit, before which the following facts were made to appear: At and before the issue and sale of said bonds, the county was in fact indebted to an amount greater than that permitted by the limitation contained in the constitution and statute of Colorado, above cited; and there-fore, as a matter of fact, the issue of said series of bonds, and the issue of each one thereof created an indebtedness on the part of the county in excess of the constitutional and statutory limitation applicable to said county at the date of the issue of said bonds. The plaintiff bought six of said series of bonds, paying full value therefor, relying upon the recitals in the bonds contained, and without making any examination into the facts that might appear upon the records of the county, and without any actual knowledge of the facts other than such knowledge with which he might be held chargeable from the statements in the bonds and the constitution and statutes of Colorado.

Upon the case as above stated, the Circuit Court of Appeals certified to this court the following questions and propositions of law:

" 1. In view of the provisions of the act of the legislature of Colorado, approved March 24, 1877, providing for the making of a public record of the indebtedness and financial condition of the several counties in said State, was the said John Sutliff, plaintiff herein, when about to purchase the bonds sued on and issued under the provisions of said act of March 24, 1877, charged with the duty of examining the record of indebtedness provided for in said act, in order to ascertain whether the bonds he proposed to purchase were lawfully issued or whether

be shown from what officer and on what account any money has been received, and the amounts, and to what individuals and on what account any money has been paid, and the amounts, and shall strike the balance, show-ing the amount deficit, if any, and the balance in the treasury, if any; and the statement thus made, in addition to being published as before specified, shall also be entered of record by the clerk of the board of county commis-sioners in a book to be by him kept for that purpose only, which book shall be open to the inspection of the public at all times.

the issuance thereof did not increase the indebtedness of the county beyond the constitutional limit ?

"2. Do the recitals found in said bonds estop the county of Lake, as against a purchaser thereof for value before maturity, from proving as a defence thereto that when said series of bonds were issued the indebtedness of the county already equalled or exceeded the amount of indebtedness which the county could legally incur under the provisions of the constitutional limitation already cited?"

*Mr. John McClure* for plaintiff in error.

*Mr. H. B. Johnson* for defendants in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The constitution, as well as the statute, of Colorado absolutely forbade a county to issue bonds, under any circumstances, to such an amount as would make the aggregate amount of the indebtedness of the county more than six dollars on each thousand if the assessed valuation of the taxable property in the county was more than five millions of dollars, or twelve dollars if such valuation was less than five and more than one million; and limited the right to issue bonds, without a previous vote of the qualified electors of the county, to half of such rates.

The statute, moreover, required the county commissioners, in submitting the question to a vote of the electors, to enter of record an order specifying the amount required and the object of the debt; and also made it their duty to publish, and to cause to be entered on their records, open to the inspection of the public at all times, semi-annual statements, exhibiting in detail the debts, expenditures and receipts of the county for the preceding six months, and striking the balance so as to show the amount of any deficit and the balance in the treasury.

It is stated in the certificate upon which this case    mes

before us that at the time of the issue of the bonds in question the defendant county was in fact indebted beyond the constitutional and statutory limit, and the issue of each bond therefore created a debt in excess of that limit; and that the plaintiff bought the bonds, upon the faith of the recitals therein, and without making any examination into the facts appearing on the records of the county.

Upon these facts, in the light of the previous decisions of this court, it is clear that the plaintiff, although a purchaser for value and before maturity of the bonds, was charged with the duty of examining the record of indebtedness provided for in the statute of Colorado, in order to ascertain whether the bonds increased the indebtedness of the county beyond the constitutional limit; and that the recitals in the bonds did not estop the county to prove by the records of the assessment and the indebtedness that the bonds were issued in violation of the constitution.

In those cases in which this court has held a municipal corporation to be estopped by recitals in its bonds to assert that they were issued in excess of the limit imposed by the constitution or statutes of the State, the statutes, as construed by the court, left it to the officers issuing the bonds to determine whether the facts existed which constituted the statutory or constitutional condition precedent, and did not require those facts to be made a matter of public record. *Marcy* v. *Oswego*, 92 U. S. 637; *Humboldt* v. *Long*, 92 U. S. 642; *Dixon County* v. *Field*, 111 U. S. 83; *Lake County* v. *Graham*, 130 U. S. 674, 682; *Chaffee County* v. *Potter*, 142 U. S. 355, 363.

But if the statute expressly requires those facts to be made a matter of public record, open to the inspection of every one, there can be no implication that it was intended to leave that matter to be determined and concluded, contrary to the facts so recorded, by the officers charged with the duty of issuing the bonds.

Accordingly, in *Dixon County* v. *Field*, above cited, which arose under an article of the constitution of Nebraska, limiting the power of a county to issue bonds to ten per cent of the assessed valuation of the county, it was adjudged that a county

issuing bonds, each reciting that it was one of a series of $87,000 issued under and by virtue of this article of the constitution and the statutes of Nebraska upon the subject, was not estopped to show by the assessed valuation on the books of public record of the county that the bonds were in excess of the constitutional limit; and Mr. Justice Matthews, delivering the unanimous judgment of the court, fully stated the grounds of the decision, which sufficiently appear by the following extracts:

"If the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be that the authority to act at all depended upon the actual objective existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow, that all persons claiming under the exercise of such a power might be put to the proof of the fact, made a condition of its lawfulness, notwithstanding any recitals in the instrument." 111. U. S. 93.

"In the present case there was no power at all conferred to issue bonds in excess of an amount equal to ten per cent upon the assessed valuation of the taxable property in the county. In determining the limit of power, there were necessarily two factors: the amount of the bonds to be issued, and the amount of the assessed value of the property for purposes of taxation. The amount of the bonds issued was known. It is stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but, *ex vi termini*, it was ascertainable in one way only, and that was by reference to the assessment itself, a public record equally accessible to all intending purchasers of bonds, as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of

the bonds can take the place of the assessment itself, for it is the amount, as fixed by reference to that record, that is made by the constitution the standard for measuring the limit of the municipal power. Nothing in the way of inquiry, ascertainment or determination as to that fact is submitted to the county officers. They are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary in the exercise of their functions, and the performance of their duty; but the information is for themselves alone. All the world besides must have it from the same source, and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it." 111 U. S. 95.

That decision and the grounds upon which it rests were approved and affirmed in *Lake County* v. *Graham* and *Chaffee County* v. *Potter*, above cited, each of which arose under the article of the constitution of Colorado now in question, but under a different statute, which did not require the amount of indebtedness of the county to be stated on its records. In *Lake County* v. *Graham*, each bond showed on its face the whole amount of bonds issued, and the recorded valuation of property showed that amount to be in excess of the constitutional limit; and for this reason, as well as because the bonds contained no recital upon that point, the county was held not to be estopped to plead that limit. 130 U. S. 682, 683. In *Chaffee County* v. *Potter*, on the other hand, the bonds contained an express recital that the total amount of the issue did not exceed the constitutional limit, and did not show on their face the amount of the issue, and the county records showed only the valuation of property, so that, as observed by Mr. Justice Lamar in delivering judgment: "The purchaser might even know, indeed it may be admitted that he would be required to know, the assessed valuation of the taxable property of the county, and yet he could not ascertain by reference to one of the bonds and the assessment roll whether the county had exceeded its power, under the constitution, in the premises." 142 U. S. 363.

The case at bar does not fall within *Chaffee County* v. *Potter,* and cannot be distinguished in principle from *Dixon County* v. *Field* or from *Lake County* v. *Graham.* The only difference worthy of notice is that in each of these cases the single fact required to be shown by the public record was the valuation of the property of the county, whereas here two facts are to be so shown, the valuation of the property, and the amount of the county debt. But, as both these facts are equally required by the statute to be entered on the public records of the county, they are both facts of which all the world is bound to take notice, and as to which, therefore, the county cannot be concluded by any recitals in the bonds.

*It follows that the first question certified must be answered in the affirmative, and the second in the negative. Ordered accordingly.*