BURLINGTON SAV. BANK v. CITY OF CLINTON, IOWA.

(Circuit Court, N. D. Iowa, E. D.   November 4, 1901.)

1. MUNICIPAL CORPORATIONS—BONDS FOR STREET IMPROVEMENTS—IOWA STATUTE.

Acts 23d Gen. Assem. Iowa, c. 14, § 6, authorizing cities to make street improvements, provides that "for the purpose of providing for the payment of the cost and expenses of any such improvement the council * * * shall be authorized from time to time as the work progresses, to make requisitions upon the mayor of the city, for the issue of the bonds of the city in such sums as shall be deemed best." The amount and terms of such bonds are specified, and it is further provided that when any such improvement shall have been completed it shall be the duty of the council to ascertain the entire cost, and what portion may be by law assessable on adjacent property or against any street railway, and to make such assessments; the money collected thereon to be applied to payment of the bonds. There is no requirement that the bonds shall recite that they are payable from any particular fund. *Held,* that bonds issued under such act create an indebtedness of the city, and are affected by the constitutional provision limiting the amount of its indebtedness; recitals in such bonds that they are issued to provide for the cost of a certain improvement, which is assessable against abutting property, and is made a lien thereon, being merely to show the power of the city to issue the same under, the statute, and to provide means for their payment.

2. SAME — LIMITATION OF INDEBTEDNESS — NOTICE TO PURCHASERS OF BONDS.

Where an issue of bonds under such statute, which were all sold to the same purchaser, in itself exceeded the constitutional limit of the city's indebtedness, the purchaser is chargeable with notice of such fact, and put upon inquiry as to the amount of its prior indebtedness and the amount of further indebtedness which it could lawfully contract, and is limited in his recovery against the city to such amount.

3. SAME—REMEDIES OF BONDHOLDERS.

Such bondholder has, however, the further equitable right arising from the statute and the recitals in the bonds, where the improvement has been made and paid for from the proceeds of the bonds, to require the city to exercise for his protection every lawful power it possesses to levy and collect from the property benefited by the improvement so much of its cost as is legally chargeable thereon, and for that purpose may bring all property owners affected into a court of equity, where their rights can be determined, and appropriate relief granted to complainant by mandatory injunction against the city, or other proper process.

In Equity.   On final hearing.

A. L. Schuyler and Carr & Parker, for complainant.

S. C. Scott, W. J. McCoy, and Ellis & Ellis, for defendant.

SHIRAS, District Judge.   This is a suit brought to enforce the payment of certain negotiable bonds issued by the city of Lyons, Iowa, under date of May 15, 1894.   By proper proceedings taken under the statutes of Iowa in the year 1895 the city of Lyons was annexed to the city of Clinton, and therefore, under the provisions of section 614 of the Code of Iowa, this suit in equity was brought against the city of Clinton to establish the amount due from the city of Lyons, which has passed out of existence, and to secure payment thereof through the action of the council of the city of Clinton; it being enacted in section 614 of the Code—

"That the indebtedness of the city or town annexed shall be paid, by such city or town, and the council of the city, as it exists after annexation, is

authorized, and it is made its duty, to provide for the payment of such indebtedness by the levy of taxes upon the property subject to taxation within the limits of such city or town so annexed, and to continue such tax from year to year so long as the same shall be necessary."

To the bill originally filed a demurrer was interposed and overruled in an opinion reported in (C. C.) 106 Fed. 269, to which reference may be made for a more full statement of the facts of the case. From the evidence submitted it appears that in 1893 the city council of Lyons undertook the improvement of Sixth street, and to that end passed a resolution for the grading, curbing, and paving of said street for a width of 42 feet from the south line of improvement district No. 1 to the city limits of Lyons and Clinton, under the designation of "Improvement District No. 3"; the same to be completed by November 1, 1893. Bids for this work were invited by the publication of notices to contractors in the newspapers of the city, requiring the bids to be filed with the city clerk on or before July 5, 1893; it being further stated that:

"Such bids to be made upon the basis of receiving cash for such improvements, and upon the basis of receiving, when collected, the first installment of the amount assessed to abutting property, due on and after the date of such assessment, with six per cent. interest, and city improvement bonds for balance."

Two parties filed bids for the work, and on the 11th day of July, 1893, the city council rejected one bid, for informalities, and referred that of the Lyons Construction Company to the finance committee. On the 31st day of October, 1893, the city council adopted a resolution amending the resolution of May 30, 1893, by striking out the words "the 1st day of November, A. D. 1893," and by inserting in lieu thereof the words "the 1st day of August, A. D. 1894," thus changing and extending the time for the completion of the proposed improvement. The delay in acting upon the bids submitted by the Lyons Construction Company was due to the fact that arrangements could not be made for a sale of the bonds of the city, which sale was necessary to raise the funds to meet the contract price for the improvements, and hence action was postponed until about May 1, 1894, when a contract was entered into with the construction company for furnishing the labor and materials necessary to complete the proposed improvements; and under the terms of the contract the work was completed and accepted by the city authorities, and the construction company was paid the amount due for the work done, the total being the sum of $38,596.45. This money was procured by the sale on the part of the city of negotiable bonds in two series,—one of $7,000, and the other of $33,000,—in the form following:

Improvement Bond.

United States of America, State of Iowa, Clinton County.

Number ———.                                    500 Dollars.

Lyons City.

Improvement Bond.

District No. 3, Series No. 2.

Lyons City, in the state of Iowa, for value received, promises to pay the bearer on the 15th day of May A. D. 1901, or at any time before that date, at the pleasure of the said Lyons City, the sum of five hundred dollars, with interest thereon at the rate of six per centum per annum, payable semian-

nually on the 15th day of November and the 15th day of May, on the presentation and surrender of the interest coupon hereto attached as they respectively become due. Both principal and interest of this bond are payable at the National Park Bank, New York City, under and by virtue of chapter 14 of the Acts of the 23rd, and as amended by the 24th, General Assembly of the State of Iowa, and in accordance with an ordinance passed by the city council of said city on the 14th day of June, A. D. 1892, and in pursuance of resolutions of said city council passed May 30, May 31st, and October 31, 1893. This bond is one of a series of sixty-six bonds of like tenor, date, and amount, numbered 83 to 148, inclusive, and issued for the purpose of providing for the payment of the cost of certain improvements in, upon, and along Sixth street, in said Lyons City, which cost is assessable against and payable by abutting property and street railway benefited thereby, and is made by said law a lien on said abutting property and street railway, and payable in seven annual installments, with interest on said deferred payments at the rate of six per cent. per annum; and it is hereby certified and recited that all of the acts, conditions, and things required to be done happened and performed in regular and due form as required by law, and for the payment hereof, both principal and interest, the full faith and credit of Lyons City is hereby irrevocably pledged, in accordance with said chapter 14 of the Acts of the 23rd, as amended by the 24th, General Assembly of Iowa, and the ordinance and resolution heretofore referred to.

In witness whereof, Lyons City, by its city council, has caused this bond to be signed by its mayor, sealed by the corporate seal of the city, countersigned and registered by its city clerk, this 15th day of May, A. D. 1894.

C. L. Root, Mayor of Lyons City.

Countersigned:
 C. L. Root,
 Chas. F. Nagel,
 Geo. T. Leedham,
 Charles I. Parker,
   **Committee on Paving.**
Countersigned and Registered:
 I. N. Manville, City Clerk.

These bonds were purchased by the Burlington Savings Bank, a corporation created and organized under the laws of the state of Vermont; the negotiations being carried on through the firm of Farson, Leach & Co., of Chicago, Ill.; the purchase being completed about June 7, 1894. After the completion of the work on the street the city apportioned the cost thereof among the city, the street railway company, and the abutting owners, as required by the statutes of Iowa; and thereupon certain of the owners of property thus assessed brought a suit in equity in the district court of Clinton county to restrain the city of Lyons from collecting the tax thus assessed, on the ground that the city council had acted without warrant of law in contracting with the construction company for the street improvement, in that no bids had been asked or received after the change in the time fixed for the completion of the work caused by the action of the council in amending the resolution in the manner already stated. The district court granted the relief asked for, and on appeal the supreme court affirmed the ruling. Osburn v. City of Lyons, 104 Iowa, 160, 73 N. W. 650. After the rendition of the judgment in that case the city ceased to make payments of the interest on the bonds in question, and thereupon this suit was instituted for the purpose of determining the rights of the parties.

The position taken by the defendant is that, under the decision of the state supreme court in the Osburn Case, the property of the

abutting owners cannot be subjected to a special assessment to meet or cover the cost of the improvement, and that the bondholders must therefore be relegated to such claim as they can enforce against the city of Lyons, and that the bonds are not enforceable against the city, for the reason that the amount thereof would increase the indebtedness of the city to a sum in excess of 5 per cent. upon the taxable property of the city, which would be in contravention of the provisions of the state constitution which limits municipal indebtedness to 5 per cent. upon the amount of the taxable property within the municipality. The method of procedure provided for in chapter 14, Acts 23d Gen. Assem., is that the improvement must be petitioned for by the owners of a majority of the feet front abutting on the street to be improved, or the improvement must be voted for by three-fourths of the members of the council. The work proposed must be done by contract awarded to the lowest bidder after due notice published in at least two newspapers of the city. To meet the cost of such improvement, bonds may be issued by the city in an amount not exceeding the contract price, with the necessary incidentals, payable seven years after date, with interest not exceeding 6 per cent., payable semiannually. The bonds, when issued, may be sold at not less than par; the money received therefrom to be paid by the city treasurer, to be by him kept in a separate fund, and be paid out, on requisitions of the council, for the cost of the improvement. When the improvement is completed, it becomes the duty of the council to ascertain the entire cost thereof, and the portion thereof assessable on adjacent property, which shall then be assessed against the abutting property; provision being made for notice to the property owners of the proposed assessment, and for a hearing upon objections made thereto; the assessment being declared to be a lien upon the abutting property from the commencement of the work of the improvement. It is further provided in section 10 of the act that:

"Whenever any street railway may have been constructed and shall remain upon any street which the council may direct to be paved, at the time such direction shall be given, and when the owner of such street railway may be bound to pave any portion of said street by any action of the city under section 1 of chapter 16 of the Acts of the 22nd General Assembly, or by virtue of the provisions or conditions of any ordinance of the city under which said street railway may have been constructed, or may be maintained, and if the owner shall fail or refuse to comply with the order of the council to do such paving, then the portion of the cost of paving such street, assessable upon such street railway, shall be ascertained and shall be assessed against such street railway."

As already stated, it is shown in the evidence that the improvement contemplated in the resolution adopted by the city council under date of May 30, 1893, was one within the power of the city to undertake; that it was ultimately undertaken and properly completed, and the cost occasioned thereby was paid from moneys received from the sale of the negotiable bonds issued by the city, and that an assessment was levied upon the abutting property to provide funds to pay the bonds, but upon petition of some of the property owners this special assessment has been adjudged to be in-

valid and nonenforceable by the supreme court of the state, for the reason that after the bids for doing the work were advertised for and received the council changed the time for the completion of the work, but did not call for bids upon the improvement after this change in the time set for its completion.

The first question to be considered is whether the city of Lyons can be held liable for the payment of the bonds, in view of the limitation upon the extent of municipal indebtedness contained in the constitution of the state. As I construe the bonds in question, they always constituted or created an indebtedness on part of the city. The promise to pay on the part of the city is absolute. It is true that they recite that they are issued to provide for the payment of the cost of improving Sixth street, in Lyons City, which cost is assessable against the abutting property, and is made a lien thereon; but, in effect, this is but a recital of the power possessed by the city for levying and enforcing a special assessment, as a means towards providing funds for the payment of the debt created by the issuance and sale of the bonds, and there is no declaration in the bonds to the effect that they are payable only out of a particular fund. Furthermore, it is clear from the provisions of the act of the 23d general assembly that it was intended to authorize the issuance of bonds binding the city as the promisor. The act (section 6) declared that:

"For the purpose of providing for the payment of the cost and expenses of any such improvement the council * * * shall be authorized from time to time, as the work progresses, to make requisitions upon the mayor of the city for the issue of the bonds of the city in such sums as shall be deemed best."

It is made the duty of the mayor to execute the bonds, but it is not required that the bonds shall recite that they are payable out of a particular fund, but, on the contrary, the provision is that the mayor shall issue bonds of the city, the same to be issued from time to time as the work progresses, and then in section 10 of the act it is declared that:

"When any such improvement shall have been completed it shall be the duty of the council to ascertain the entire cost of the improvement, and also what portion of such cost may be by law assessable on adjacent property, and the portion of such cost so assessable shall then be assessed as provided by law, or by ordinance of such city, upon the property fronting or abutting on said improvement."

This section clearly shows that it is not expected that the abutting property will be liable for the whole cost, but only for a portion thereof, and the amount thereof cannot be ascertained until after the completion of the whole improvement, which may be months after the letting of the contract and the sale of the bonds. During this interval of time the city must certainly be bound to the purchaser of its bonds, or else the bondholders would hold no legal claim against any one; and, having once become bound for the payment of the bonds issued by it, there is nothing in the statute which enables the city to shift its liability upon the owners of the property abutting on the improvement. It must therefore be held that the bonds, when issued, created an indebtedness against the city,

within the meaning of that term as used in section 3, art. 11, of the state constitution, which limits the indebtedness of municipalities to 5 per cent. of the taxable property therein. There is not found on the face of the bonds any express recital to the effect that they do not cause the city indebtedness to exceed the limit. Furthermore, the evidence shows that the complainant bank purchased at the one time the whole issue of $40,000, and therefore knew that this issue in itself exceeded the constitutional limit, as it is shown that the total value of the taxable property within the limits of Lyons City at this time was the sum of $783,000, thus making the constitutional limit of indebtedness the sum of $39,150. The complainant, being bound to take notice of the value of the taxable property within the city, knew, therefore, that the total issue of bonds purchased by it exceeded the 5 per cent. limit. Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040; Sutliff v. Lake Co., 147 U. S. 280, 13 Sup. Ct. 318, 37 L. Ed. 145. This being the situation, the complainant is entitled to enforce against the city so much of the indebtedness evidenced by the bonds purchased as will not, when added to the pre-existing indebtedness, cause the total to exceed the constitutional limit.

As already stated, the limit of indebtedness lawfully creatable by the city of Lyons at the date of the issuance of the bonds was the sum of $39,150, and in the stipulation of facts submitted in the case it is admitted that the city was then indebted in the sum of $29,000; the difference between the two sums being $10,150. It is further shown that the city had collected on the special assessment levied on the abutting property the sum of $3,921.31, and had paid out of this amount, for interest on the bonds, and the incidental expenses connected with the improvement, the sum of $3,138.75, leaving in the hands of the city a balance of $882.56, which, being added to the sum of $10,150, makes a total of $11,032.56, which can be adjudged against the city without overstepping the constitutional limit, and upon which amount interest at 6 per cent., payable semiannually from and including May 16, 1895, is legally due and collectible. Equitably this amount would appear to be apportionable between the two series of bonds issued by the city of Lyons and sold to the complainant bank; one series being for $7,000, and the other for $33,000. The present suit is based alone on the series for $33,000, and it does not appear whether the bank is now the owner of both series or not. Upon the record as it now stands, the court must treat the $7,000 as an indebtedness due in full; and the amount recoverable upon the series of bonds declared on in this suit is therefore reduced to the sum of $4,032.56, with interest at 6 per cent., payable semiannually, dating from May 16, 1895.

So far the case has been viewed solely with reference to the question of the liability of the city of Lyons upon the bonds issued, viewed as contracts between the city and the bondholders. There is, however, involved in the issues the question of the equitable rights and remedies of the complainant as against the property owners, who have in fact received the benefit of the street improvement, the cost

of which was defrayed in the first instance by the money paid by complainant in the purchase of the bonds. The statute of Iowa under which the improvement of the street was undertaken made provision for assessing the larger part of the expense upon the abutting property and upon any street railway company whose track was laid and maintained along the improved street; and, beyond all question, when the city undertook to improve Sixth street the city and the abutting owners expected that the proper proportion of the cost would be assessed upon the adjacent property. The purchaser of the bonds, by reason of the recitals therein, and of the provisions of the statute under which the improvement was made and the bonds were issued, was justified in assuming that due provision would be made for collecting the funds to aid in paying the bonds by the assessment of a special tax upon the abutting property, including the street railway company. In equity the bondholder has the right to call upon the city of Lyons to enforce for his protection every power and right the city can exercise to levy and collect from the property benefited by the improvement the cost thereof, which is in fact and in truth represented by the bonds owned by complainant. It is shown in the evidence that the State Electric Company, which owned the street railway line on Sixth street, in consideration of an amendment of section 6 of the original resolution of May 30, 1893, reducing the space to be paved by or at the expense of the railway company, in writing waived its right to construct the pavement along or between its rails, and agreed—

"That Lyons City shall cause to be paved all the space between the rails of the track of said company and one foot outside thereof, in accordance with the law in such cases made and provided, and assess and levy the cost of the same against the property of said State Electric Co., in Lyons City, Iowa, when the same shall become due and collectible under said ordinance and resolutions."

It is not now perceived why this agreement on the part of the street railway company is not a waiver of all objections to the improvement of the street, and why the company is not bound thereby to respond to the assessment of its proper proportionate share of the total cost; but the railway company is not a party to the record, and the question of its liability ought not to be finally passed upon until it has the opportunity to be heard. In a supplemental opinion filed by the supreme court of Iowa in passing upon a petition for rehearing in the Osburn Case, supra, and found in 75 N. W. 672, it is said:

"We have not considered the liability of the plaintiffs or their property, except as it was dependent upon the contract and assessment which we have discussed. The decree to be entered in this court will not affect any right, not dependent upon such contract and assessment, which the defendants may have to recover for the improvement in question. Whether such a right exists, we do not determine."

Some discussion is had in the briefs of counsel upon the proposition whether the city, for the protection of the bondholders, can enforce in any method against the property abutting on the improved street the payment of the cost of the improvement. In the present state of the record this question cannot be determined, for

the reason that the owners of abutting property are not parties to the suit, and the court should not enter upon a consideration of a question which materially affects their interests without giving them the right to be heard. In order, therefore, to the final hearing and determination of the questions arising under the facts of this case, it is necessary that additional parties should be brought into the case. If it be the fact that the series of $7,000 of bonds issued by the city of Lyons are not now owned by the complainant bank, and the latter desires to present the question of an equitable apportionment of the amount found to be enforceable against the city of Lyons, the present holders of the bonds should, if possible, be made parties to the record. As already stated, in order to determine the question whether the street railway company and the owners of the abutting property can be called upon to pay the cost of the improvement of Sixth street, or any portion of such cost, it is necessary that these parties should be brought into the case and afforded the opportunity to be heard in defense of their rights.

In this view of the case, it is ordered that complainant has leave to file an amendment to the bill for the purpose of covering any one or all of the questions suggested, and to bring in the necessary parties, requiring them to appear and show cause why a mandatory injunction or other proper process should not issue, commanding the city of Clinton, through its council, to levy and collect a special assessment upon the abutting property; such amendment to be filed by December 15, 1901.