[No. 1536, April 10, 1913.]

W. L. LANIGAN, Appellant, v. TOWN OF GALLUP, et als., Appellees.

SYLLABUS (BY THE COURT).

1. Sections 12 and 13 of Article IX of the State Constitution do not confer the power upon municipalities to contract indebtedness, independent of legislative authorization. In this regard such sections are not self-executing.

2. A constitutional provision is self-executing, when it takes immediate effect and ancillary legislation is not neces-

sary to the enjoyment of the right given, or the enforce-
ment of the duty imposed.

3. Where the board of trustees of a town proceeding
under Sections 12 and 13 of article IX of the Constitution
held an election to determine the question as to the issu-
ance of bonds for the construction of a system of water
works and sewers, and did not follow the procedure re-
quired by sub-sec. 67, C. L. 1897, the bonds authorized at
such election are invalid.

4. The twelve mill levy limitation, fixed by section 12
of article IX, does not apply to debts contracted for the
purchase or construction of a system for supplying water,
or for a sewer system, for cities, towns or villages.

5. Cities, towns and villages are not authorized to sub-
mit to the voters of such municipality the joint proposition
of issuing bonds for the double purpose of constructing a
water works system and building a system of sewers, with-
out providing for a separate vote upon each question.

Appeal from District Court, McKinley County.

John A. Young, for Appellant.

Section 12, article 9 of the Constitution does not con-
fer any direct authority, grant or power for the creating
of an indebtedness, but contains merely inhibitions rela-
tive to indebtedness. Secs. 12 and 13, art. 9, Constitution;
sec. 21, art. 22, Constitution; 34 Pac. 559; 122 N. W.
403; 18 N. D. 289; Ordinance 121 of the Town of Gallup.

A. T. Hannett and F. William Kraft, Chicago, Ill.,
for Appellees.

Sections 12 and 13, article 9, of the Constitution, au-
thorizes incurring indebtedness, issuing bonds and levy-
ing taxes to pay principal and interest of bonds by muni-
cipal corporations. Secs. 12 and 13, art. 9, Constitution.

As to the contention that submission to the voters was

not in compliance with legal requirements. Borner v. City of Prescott, 136 N. W. 552; Blaine v. Hamilton, 64 Wash. 355; Stein v. City of Fargo, 26 L. R. A. (N. S.) 665; Coleman v. Eutaw, 157 Ala. 327; Kemp v. Hazelhurst, 80 Miss. 443; State ex rel. Chillicothe v. Wilder, 200 Mo. 97; Cary v. Blodgett, 10 Cal. App. 463; Ryan v. Orbison, 7 Ohio C. C. 30; sec. 27, art. 10, Constitution; State ex rel Millar, 96 Pac. 747; Dillon on Municipal Corporations, sec. 902.

### STATEMENT OF FACTS.

The town trustees of the town of Gallup, McKinley County, New Mexico, by ordinance provided for the submission to the voters of said town, the question of the issuance of $64,000 of water works and sewer bonds, for the purpose of constructing and erecting a system of water works and sewers. The proposed issue of bonds was authorized by the vote of the tax paying electors of said town, and thereafter, by ordinance, the town trustees provided for the sale of the bonds to the highest bidder. The bonds were sold and the town trustees were proposing to issue $50,000 of said bonds when the present action was instituted in the court below to enjoin the town officers from so doing. The lower court refused to restrain the issuance of said bonds and dismissed the complaint upon the merits, from which judgment this appeal is prosecuted.

### OPINION OF THE COURT.

ROBERTS, C. J.—Sub-section 67 (sec. 2402, C. L. 1897, confers upon cities and towns the power to erect and operate water works, sewers and sewer systems, and other public utilities, and specifically provides the procedure by which the question of incurring an indebtedness therefor shall be submitted to a vote of the electors of such city or town. Provision is also made for the issuance and sale of the bonds as evidence of such indebtedness, and the levy of a tax to provide for the payment of the principal and interest of the bonds authorized.

The state constitution, adopted in 1911, and under which New Mexico was admitted as a state in January

1912, by sections 12 and 13 of article 9, provides as follows:

"Sec. 12. No city, town or village shall contract any debt except by an ordinance, which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, and which shall specify the purpose to which the funds to be raised shall be applied, and which shall provide for the levy of a tax, not exceeding twelve mills on the dollar upon all taxable property within such city, town or village, sufficient to pay interest on, and to extinguish the principal of such debt within fifty years. The proceeds of such tax shall be applied only to the payment of such interest and principal. No such debt shall be created, unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, have been submitted to a vote of such qualified elec tors thereof as have paid a property tax therein during the preceeding year, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall have voted in favor of creating such debt."

"Sec. 13. No county, city, town or village shall ever become indebted to an amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such county, city, town or village, as shown by the last preceding assessment for state or county taxes; and all bonds or obligations issued in excess of such amount shall be void; provided, that any city, town or village may contract debts in excess of such limitation for the construction or purchase of a system for supplying. water, or for a sewer system, for such city, town or village."

All proceedings looking to the issuance of the bonds in question were had after the adoption of the constitution and the admission of New Mexico as a state. No attempt was made by the town trustees to comply with the requirements of sub-section 67 of sec. 2402, C. L. 1897, but it appears that they assumed that the provisions of the constitution above quoted were self executing and repealed all of sub-sec. 67.

The first question, therefore, which presents itself for

determination is whether the above provisions of the constitution are self executing in that they confer the power upon municipalities to contract indebtedness independent of legislative authorization.

If such power is granted, it must be by the language used in the proviso to sec. 13, viz.: "Provided, that any city, town or village may contract debts in excess of such limitation, for the construction or purchase of a system for supplying water, or of a sewer system, for such city, town or village," for it could not be argued, with any plausibility that other language used, in either of said sections confers such power, or authorizes the creation of any indebtedness, for any purpose, independent of legislative authorization, it would not be contended that a city or town has an inherent right, independent of legislative sanction, express or implied, to borrow money.

"Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." Dillon's Municipal Corporation (6th ed.) sec. 237. The power to borrow money may be granted to such corporations or withheld from them by the Legislature; and the Legislature may limit the right to certain purposes. It may grant the power for one purpose and withhold it as to others.

Section 13 of said article contains no language, which by any rule of construction, could be held to confer power upon such municipalities, independent of a legislative grant, to incur indebtedness for any purpose. Said section begins: "No city, town or village shall contract any debt except by an ordinance," and this language is followed by specific provisions as to what the ordinance shall contain. It does not say that cities, towns and villages may contract debt, in the manner provided, but that no debt shall be created, unless it be created in a certain way. This portion of the section is simply a procedure provision, and no debt created in any other manner would be valid. It is true the language used "and which shall provide for

the levy of a tax, not exceeding twelve mills," etc., "sufficient to pay the interest on, and extinguish the principal of such debt within fifty years" is either a limitation upon the debt contracting power, or upon the tax levying power, but whether the one or the other, such clause can not be held to authorize the incurring of indebtedness, in and of itself. By the language used, we do not understand that the legislature might not properly limit the time the bonds should run to less than than fifty years, but certainly it could not provide that such bonds should run for a longer period. The concluding clause in said section is, like the first clause, a procedure provision.

That portion of sec. 13, which precedes the proviso, above quoted, is a limitation upon the debt contracting power of such municipalities. It does not undertake to confer upon such governmental agencies the power to contract debts, in the aggregate, amounting to four per centum of the value of the taxable property, but limits the amount of such aggregate debts, to such ratio of the taxable property, beyond which the Legislature is powerless to authorize. The limitations contained in said sections, upon the debt contracting power of such municipalities are certainly self executing. Doon Twp. v. Cummins, 142 U. S. 366; Dunbar v. Canyon Co., 5 Idaho 407; Law v. People, 87 Ill. 385. And the procedure provisions of sec. 12 are self executing, in the sense, that no debt contracted, except in compliance therewith, would be valid. But no language used in either of said sections, can be held to confer the authority upon municipalities to contract debts, unless such power is conferred by the proviso to sec. 13, to contract debts for water and sewer systems. By this proviso, the framers of the constitution were carving an exception out of the limitations theretofore imposed upon the debt contracting power of such municipalities. In other words, by previous language used, the convention placed limitations upon the legislative power to authorize, and the municipal power to incur, indebtedness, out of which limitations it excepted debts for the two purposes named, leaving intact, however, the procedure provisions. It will be noted, however, that such procedure provisions are not complete, in and of

themselves, but that legislation is required to supplement them.

A constitutional provision may be said to be self-executing when it takes immediate effect and ancillary legislation is not necessary to the enjoyment of the right given, or the enforcement of the duty imposed. In short, if a constitutional provision is complete in itself, it executes itself. Town of Lyons v. City of Longmont (Colo.) 129 Pac. 198; Davis v. Burke, 179 U. S. 399; Cooley on Constitutional Limitations, 7th ed., sec. 121; Willis v. Mahon, 48 Minn. 140; 50 N. W. 1110.

Tested by the above rule, a brief consideration of the language used in the sections, will clearly demonstrate that such provisions are not complete, but that legislation is necessary to the enjoyment of the right given.

Under sec. 12, before such debt can be incurred the question must first be submitted to a vote of the qualified electors of such municipality, who have paid a property tax therein during the preceding year. By whom, or what board or body is the question to be submitted? No provision is made as to any notice to be given the electors that such a question will be submitted. While such question must be determined by ballot, deposited in a separate ballot box, no provision is made as to what said ballot shall contain, or how the voter shall express his desire. How is the vote to be canvassed, and to whom shall the return be made; again, when it comes to issuing the bonds, for what length of time shall they run? Who is to execute the bonds? What rate of interest shall they bear? In what denominations shall they be issued? How shall they be sold? If it be argued that many of these questions are already provided for by existing laws, such argument would only tend to demonstrate that the provisions in question are not self executing, for it would be evident that it was necessary to supplement such provisions by law, and all the reasoning advanced for sustaining the validity of the bonds in this case would fall.

Here, no contention is made that the town authorities complied with the existing statutes upon the subject, but the broad claim is made that it was unnecessary to

comply with any of the statutory provisions theretofore existing and continued in force by the constitution, because the constitutional provisions were self executing and provided a full and complete method of procedure, and in and of themselves authorized the creation of the indebtedness. We do not think the provisions in question are self executing, but legislation is necessary for the enjoyment of the rights given.

"The constitution, except when special provision is made for that purpose, does not enforce itself. It defines certain powers, but to make them operative, legislation is necessary." St. Jo. & Denv. City R. R. Co. v. Buchanan Co. Ct., 39 Mo. 485.

In the case of Ohio & Mississippi R. R. Co. v. Lawrence County, 27 Ill. 49, the contention was made that the constitution of Illinois, by the eighth section of article 5, conferred jurisdiction upon the circuit courts in all cases of appeals from inferior courts, and that the right existed in that case, (which was an attempted appeal from the action of the board of supervisors, increasing the assessed valuation of appellant's property) by force of that provision. The court says:

"As a general proposition, subject, however, to some exceptions, it may be safely asserted, that the constitution can not execute its own provisions, independent of legislative enactment. In this case it no doubt not only authorizes but requires the General Assembly to make all necessary provisions to carry this requirement into effect. if independent of legislation, an appeal were attempted, it would be found that innumerable difficulties would be presented to its accomplishment. If this constitutional provision stood alone, unaided by legislation, and an appeal were attempted, how could it be perfected? Would it be accomplished by simply filing a transcript of the record in the superior court; or would bond with security have to be given? If so, in what sum, with what conditions? Which court would impose them? Within what time would it have to be prayed and perfected? And when in the appellate court, how would the trial be had, on the transcript, or de novo on the merits? It will be readily perceived that these form not a few obstacles, that

present themselves at the very threshold of this question.

"From these considerations it appears to be perfectly apparent that this provision of the constitution cannot be carried into effect unaided by legislative enactment."

The same reasoning applied by the Illinois court is applicable to the provisions of our constitution under consideration. The submission of the question to the qualified tax paying electors is required, but the manner of conducting the election, making the returns, etc., is not provided for, and effect can not be given to these provisions unaided by legislative enactment.

Sec. 209 of the constitution of Louisiana, adopted in 1879, provided certain limitations upon the tax rate in parishes and municipalities, and concluded with the following proviso:

"Provided that for the purpose of erecting and constructing public buildings, bridges and works of public improvement in parishes and municipalities, the rate of taxation herein limited may be increased when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the property tax payers of such parish or municipality entitled to vote under the election laws of the state, and a majority of same voting at such election shall have voted therefor."

In the case of Surget v. Chase, 33 La. Ann. 833, it was contended that this provision of the constitution was self executing, and that an election held thereunder was lawful. The court, in discussing the section, says:

"The article does not purport to be a grant of taxing power to either the state or municipal authorities, which grant is to be found in article 202, but it is, what it purports to be, a restriction of the taxing power in the General Assembly and in its grant of the taxing power to parishes and municipal corporations. And the exceptions contained in the proviso under which the limit of parish and municipal taxation can be increased in certain specific cases, must remain dormant and ineffective until rectified by legislative breath. * * * It therefore follows that article 209 is not self acting."

From what we have said it follows that the provision of the constitution, requiring the submission to a vote

of the tax paying electors of the question of issuing bonds, cannot be given effect unaided by legislation. And

**3**     as no attempt was made in this case to comply with. the provisions of sub-sec. 67 of the Compiled Laws, supra, the bonds authorized by said election are invalid, and their issue is not authorized.

Sub.-sec. 67 of the Compiled Laws, supra, having been entirely disregarded, it is not necessary for us to pass upon the question as to whether said sub-section was repealed, or to what extent changed and amended by the constitutional provision above quoted. Since the election was held in this case, the Legislature, by chap. 76, Session Laws of 1912, has provided for the submission of such questions to the vote of the qualified electors, and the procedure for the issuance of bonds.

. Two other questions, however, are involved in this case, which should be determined because of their importance, and for the future guidance of municipal authorities. The first is as to the effect of that clause in sec. 12 of art. 9, which provides that the ordinance "shall provide for the levy of a tax, not exceeding twelve mills on the dollar, upon all taxable property within such city, town or village, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years" upon the right of cities, towns and villages to contract debts for supplying water and for sewer systems. If such limitation applies to such debts, it will prohibit such municipalities from exercising the right to issue bonds, without limitations, for such purpose. In other words, it provides a limitation almost, if not quite as effective as that contained in that portion of sec. 13 of said article which precedes the proviso.

The two sections of the article under consideration have for their object the regulation of the debt contracting power of such municipalities and the mode of exercising this power. Both sections being directed to the same subject matter are in *pari materia* and should be construed together with the design of advancing the object of their provisions. In order to ascertain this object it is proper to consider the occasion and necessity for their enactment.

Experience has demonstrated that it is necessary to place

a check or curb upon the power of municipalities to incur indebtedness which future generations will be called upon to repay. Given unbridled power in this regard, such municipalities are prone to contract large debts, for purposes which at the time seem desirable thereby imposing an unjust burden upon the future tax payers. Indeed, in many instances this unrestrained power led to the bankruptcy of the governmental agency and the ruin of the property owners. Various devices have been resorted to in order to prevent the incurring of such extravagant and onerous indebtedness; the constitutional limitation on the power, although of recent origin, is now chiefly relied upon and is generally adopted by most of the states. The design being to place a reasonable limitation upon the exercise of the power, thereby preventing its abuse, but at the same time giving to the municipality a reasonable leeway, so that it will not be unduly hampered in providing for the needs of the community.

With this end in view the framers of our constitution placed two limitations upon the debt contracting power. The first in sec. 12, supra, which indirectly limits any single debt, to an amount which can be discharged; both as to principal and interest, within fifty years, by the levy of a twelve mill tax upon the taxable property within such municipality; the second, found in sec. 13, supra, which limits the total indebtedness, for all purposes, which such municipality may incur to four per centum upon the taxable property within such municipality.

New Mexico is an arid state, and the greatest problem which confronts cities, towns and villages is the procuring of an ample supply of pure water. In many instances it is necessary to conduct the water supply through pipes, from the mountain streams, for many miles, and the cost is necessarily enormous. The states, in the arid region, almost without exception, have no constitutional limitation upon the amount of indebtedness which may be incurred for this purpose, and the framers of the constitution of New Mexico, familiar as they were with the conditions in the state, and the necessity which existed for an unlimited right to issue bonds and incur indebtedness for the purpose of providing a water supply, attempted, by

the proviso to sec. 13, to exempt the amount of such indebtedness from the restrictions and limitations which they had imposed upon indebtedness for other purposes. Likewise, they realized that for the health of the community, it was necessary that the sewerage should be disposed of, and they included in the same category with a water supply, sewer systems.

It is thus manifest that it was the intention of the framers of the constitution that no restraints should be laid on municipalities in their efforts to procure a water supply, by either the purchase or construction of systems for such purpose, or of sewer systems. The question then is, did the framers of the constitution so express their intention that it may be put in force.

The proviso, "any city, town or village may contract debts in excess of such limitation for the construction or purchase of a system for supplying water or of a sewer system for such city, town or village". clearly excepts indebtedness incurred for supplying water from the general provision of sec. 13, which limits the amount to which a city, town or village may become indebted to four per centum of the value of the taxable property within such city, town or village and is, in effect, permission, so far as the constitution regards this question, to become indebted in such an amount as may be necessary to furnish a supply of water for the municipality. It being the plain intent of the framers of the constitution to permit municipalities to contract indebtedness in such an amount as will provide a supply of water for the municipality, it becomes our duty to give effect to such intention. It would be vain and idle to say to a municipality, you have permission to contract indebtedness in any amount for the supplying of water and then limit the municipality in the amount it may levy for taxes to pay such indebtedness. If the provisions contained in sec. 12 of art. IX, limiting the amount which may be levied for taxes to retire or discharge the principal and interest of the indebtedness, to twelve mills per annum on the taxable property within the municipality, could be held to apply to indebtedness excepted by the proviso contained in sec. 13, then the manifest object preserved by the proviso would

be destroyed.   The carefully framed provision of sec. 12
requiring the ordinance whereby a debt is contracted by
a municipality to "provide for the levy of a tax, not ex-
ceeding 12 mills on the dollar * * * sufficient to pay the
interest on, and extinguish the principal of, such debt,"
were inserted with the object of providing against the
repudiation by a municipality of the indebtedness incurred
by the ordinance, and to fix a limitation upon the amount
of a single debt, for purposes not excepted from its opera-
tion.   To hold that this proviso withholds from the muni-
cipality the power to levy a tax sufficient to pay the in-
terest and principal of the indebtedness which it may
incur without limit, for the supplying of water, would,
in many cases compel the repudiation of its indebtedness
incurred for a water supply and therefore bring about
the very opposite of the object intended to be accomplished
by the proviso, or effectually limit the indebtedness which
could be incurred.

The rules which courts must observe in construing leg-
islative enactments apply equally to constitutional pro-
visions.   Every statute or constitutional provision must
be construed with reference to the object intended to be
accomplished by it, and as already said in order to ascer-
tain this object, it is proper to consider the occasion and
necessity for this enactment.   If the purpose and well
ascertained object of a statute or constitutional provision
is inconsistent with the precise words, the latter must
yield to the controlling influence of the will of the law-
making power, resulting from the whole act or the entire
constitution.   Commercial Bank v. Foster, 5 La. Ann.
516; State v. Clark, 29 N. J. Law 96; U. S. v. Jackson,
143 Fed. 783.

While it is true the proviso regarding indebtedness con-
tracted for supplying water for municipalities appears
at the end of sec. 13 of art. IX, in order to carry out the
manifest intention of the framers of the constitution, as
we find it to be, from a consideration of both sections 12
and 13 of said article, we must hold that the proviso is
in effect an independent provision and that neither the
limitation contained in sec. 12, limiting the amount of
the tax levy, nor the limitation contained in sec. 13, lim-

iting the amount to which a municipality may become indebted, affect the debt contracting power of a municipality with regard to indebtedness incurred for supplying water for the municipality.

While the operation of a proviso is usually and properly confined to the clause or provision immediately preceding, yet, where necessary to effectuate the intent of the law-making power, it will be considered as applying also to other proceedings or subsequent sections or to the entire act or provisions in *pari materia*. 36 Cyc. 1163; U. S. v. Babbitt, 1 Black 55.

And see also cases cited by the Supreme Court of Missouri in the case of State ex rel. Crow v. St. Louis, 174 Mo. 125; 73 S. W. 623; 61 L. R. A. 593.

In that case the court said:

"The particular intent expressed in a proviso or exception will control the general intent of the enactment," and "Neither grammatical construction, punctuation, nor relative arrangement of the several parts of the section must be allowed to absolutely control. A common sense interpretation is the safest and surest to apply, bearing always in mind the mischiefs to be remedied and the benefits to be secured by the law."

The supreme court of Alabama, in the case of Wartensleben v. Haithcock, 80 Ala. 565, in discussing the effect of a proviso, says:

"Generally, the appropriate office of a proviso is to restrain or modify the enacting clause, or preceding matter, and should be confined to what precedes, unless the intention that it shall apply to some other matter, is apparent. When, from the context, and a compromise of all the provisions relating to the same subject matter, it is manifest, that the object and intent were to give the proviso a scope extending beyond the section, and effect beyond the phrase immediately preceding, it will be construed as restraining or qualifying preceding sections relating to the subject matter of the proviso, or as tantamount to an enactment in a separate section, without regard to its position and connection."

To limit the proviso, to that portion of sec. 13, which precedes it, leaves it without any practical or serving pur-

pose and effect. When we consider the conditions prevailing in New Mexico; the necessity that exists for an ample supply of pure water for municipalities; the cost of procuring such supply; the assessed valuation of property in the cities and towns of the state; the amount of bonds which could be issued, were the 12 mill levy limitation to apply, it is apparent that it would be an absurdity for the constitution makers to say that cities, towns and villages could issue bonds, in excess of 4 per cent of the taxable property, within such municipality, or without limit as to amount, with the evident design and purpose of enabling such municipalities to issue bonds in such an amount as would be requisite to provide a water supply, and then to place upon such issue an even more effectual limitation by providing that such bonds could not be issued beyond an amount which could be discharged, as to both principal and interest, within fifty years by the levy of a 12 mill tax. We venture the assertion that a 12 mill tax would not even provide for the interest upon bonds issued, in an amount sufficient to enable any city in the state to purchase a water works system now owned and operated by private capital, much less provide a sinking fund for the payment of the principal.

It is a familiar rule of construction, applied to constitutional and statutory provisions, that, when cases of doubt arise, in arriving at the intent and purpose of the act or provisions, courts will look to contemporaneous history for the evils sought to be remedied, and the conditions that probably led up to and induced the enactment.

"When the intent and purpose of the act is thus made clear and consistent, and the act is calculated to effect the obvious purpose, necessary words may be implied, and words limited or enlarged in meaning, and the ordinary meaning of words and phrases required to yield to the construction which upholds and makes effective the legislation." Bailey v. State, 163 Ind. 165, and authorities cited.

"The intention of the law maker, if plainly expressed, must have the force of law, though it may be in the form of a proviso, the intention expressed being paramount to form." Propst v. Railroad, 139 N. C. 397.

The phraseology used in sections 12 and 13, supra, is practically the same as that found in sec. 8 of article 11 of the Colorado Constitution. The provisions of secs. 12 and 13 of article IX of the New Mexico Constitution are covered by the one section of the Colorado Constitution. In the Colorado Constitution the tax levying power is fixed at twelve mills and the limit of indebtedness at any one time is fixed at 3 per cent of the valuation, etc. Provisions as to the election are identically the same. The exception of the application of such limitations to water purposes in the Colorado Constitution is found in the following language:

"Debts contracted for supplying water to such city or town are excepted from the operations of this section."

This language not only exempts such debts from the operation of the limitations as to the total amount, and the twelve mill provision, but likewise exempts said debts from the operation of all the other provisions of the section, so that such debts may be contracted without the submission of the question to a vote of the people, and the remaining safeguards thrown around the creation of other debts. The framers of the constitution of New Mexico evidently intended to remove the limitation as to the amount of indebtedness that could be contracted for such purposes, and to leave the remainder of the section requiring a vote of the electors, etc., in full force.

For the reasons given we hold that the limitation fixed by sec. 12 of said article, providing in substance that no debt thereby created, which cannot be discharged as to both principal and interest by the levy of a twelve mill tax upon the taxable property within such municipality, within 50 years, does not apply to debts included in the proviso to sec. 13 of said article.

The second proposition is as to the right of the town to submit to the voters the joint proposition of issuing bonds for the double purpose of constructing a water works system and building a system of sewers, without providing for a separate vote upon each question. There appears to be a decided conflict in the holdings of the various courts upon the question. It would serve no good purpose to review the various cases, but we content ourselves by

Lanigan v. Gallup, 17 N. M. 627.

referring to the case note to the case of Stern v. Fargo, 26 L. R. A. N. S., 665. As the practice has not been established in this state, we are at liberty to adopt the rule which in our judgment will best protect the rights of the people and secure to the voters an opportunity to fully and freely express their desires and wishes in such matters. In the matter of voting for candidates for office, it is universally conceded that the voter must have the right to vote for or against any candidate. It would shock the moral sense were a statute enacted requiring the voter to vote for or against all the candidates on one ticket. The puropse of the constitution in requiring the submission of the question of issuing bonds to the tax paying electors of the municipality, is to determine whether or not they desire the improvement to be made and bonds issued in payment therefor. A voter might desire a system of water works, and it might be absolutely necessary to provide therefor, while on the other hand, a sewer system might reasonably be dispensed with and the voters not desire it. It is more important that a safe rule should be announced by this court in this regard, than that either line of authorities should be followed. The bonds in this case have not been issued, and the cause must be reversed for other reasons, therefore no delay or injustice will be occasioned, or rights interfered with by laying down the rule which will require such questions to be separately submitted, and by so doing we believe we will best preserve the rights of the voter and protect the municipality against fraud or imposition.

Appellees, however, insist that as the answer in this case alleges that the two systems are connected, and the one would not be desirable without the other, and the answer being taken as true, this court is bound thereby. This contention, however, is disposed of by the case of Stern v. Fargo, supra, where the court says:

"The question is not one of connecting by words, but identity of purpose, or can one naturally be operated without the other?"

In the complaint in this case it is made to appear that the town of Gallup already has a system of water works, and that the bonds are to be issued for the purpose of en-

larging it. Now it might be that the voter would desire the sewer system, but would not be in favor of enlarging the water works, or he might, were opportunity afforded, vote to enlarge the water works, and against sewers. We are of the opinion, therefore, that the two propositions should have been separately submitted so that the voter could have expressed his choice upon each question independent of the other. We do not mean to hold that the two propositions could not have been submitted at the same election, or upon the same ballot, but simply that the ballots should have been so prepared that each proposition would have stood alone.

For the reasons stated, the judgment of the lower court is reversed and the cause remanded with instructions to issue the restraining order as prayed for in the complaint, and it is so ordered.

## SYLLABUS (BY THE COURT).

