54 P.(2d) 412

SOUTHWEST SECURITIES CO. v. BOARD
OF EDUCATION OF VILLAGE OF
LOVINGTON.
No. 4066.

Supreme Court of New Mexico.
Jan. 28, 1936.

Tom W. Neal, of Lovington, for appellant.

Hugh B. Woodward, of Albuquerque, for appellee.

BRICE, Justice.

This is an appeal from a judgment in favor of the appellee (plaintiff below) in the sum of $13.75 on account of a negotiable interest coupon originally attached to a refunding bond issued by appellant and owned by appellee. Jury was waived and the case tried to the court. Each of the parties requested findings of fact and conclusions of law. From these the court adopted certain findings, from which we take the following as facts material to a decision.

The appellant is a school district organized under chapter 99 (section 4807 et seq.) N.M.Code of 1915, as amended. On July 1, 1918, to build a school building it issued $42,000 of bonds, retirable at the option of the school district after July 1, 1928. On the last-mentioned date, it issued $42,000 of its negotiable coupon refunding bonds under chapter 128 of the N.M.Session Laws of 1927 (Comp.St.1929, § 90-1101 et seq.), to refund such outstanding indebtedness, of which only $41,500 were outstanding. The refunding bonds contained, among other provisions, the following:

"This bond is issued by the Board of Education for the purpose of paying, redeeming and refunding a like amount of outstanding, unpaid, payable, lawful and valid bonds of said Board, and the lawful and valid indebtedness evidenced thereby, and in exchange therefor, under, by virtue of and in full conformity with the provisions of an act of the Legislature of the State of New Mexico, * * * approved March 14, 1927, and pursuant to a resolution duly adopted by said Board of Education at a lawful meeting thereof, held prior to the issuance of this bond; and it is hereby certified and recited that all acts and things required to be done and conditions and things required to exist precedent to and in the issuance of this bond to render the same lawful and valid, have happened, been properly done and performed, and did exist in regular and due time, form and manner as required by law, and that the total debt of said Board of Education, including that of this bond, exceeds neither the statutory nor the constitutional limitations of the State of New Mexico, and that said total debt is not increased by the issuance hereof.

"The full faith and credit of the Board of Education of the Village of Lovington, State of New Mexico and School District No. 1 of Lea County are hereby pledged for the punctual payment of the principal and the interest upon this bond."

The appellee, in purchasing bond No. 26, and coupon No. 9, sued on herein (true copies of which are attached to plaintiff's [appellee's] complaint), relied upon the truth of the recitals in the coupon and bond to which it was attached, and the truth of the records certified by the board of education of the appellant district, that part of the contents of which necessary to an understanding of the case will be referred to in the opinion; but had no notice or knowledge of any of the matters or things

set up by the defendant (appellant) in its answer. All of the other bonds so issued were delivered by the appellant to the purchaser without the consideration being paid therefor. The statement contained in each of the bonds that it was in exchange for outstanding, lawful, and valid bonds of the appellant was false in this: That none of the outstanding bonds for which the $42,000 in bonds were issued to refund had been canceled, surrendered, or burned, as provided by article 11, chapter 90 (section 90-1101 et seq.), N.M.Stats.Ann.1929, when the refunding bonds were deilvered to the purchaser. Of the original· bonds there are twenty-five of $500 each which either have never been presented for exchange and are outstanding, or else have been reduced to judgment against the appellant. Appellant has received no consideration for those twenty-five bonds issued July 1, 1928, which were intended to refund the twenty-five bonds not exchanged. Bond 26 of the original issue should have been exchanged for the refunding bond No. 26. The question of whether the refunding bonds should be issued was not submitted to the people of the school district at an election held for that purpose, nor voted on. Bond No. 26 and the coupon sued on were by their terms payable "in gold coin of the United States of America of or equal to the present standard of weight and fineness." Records not copied herein and other facts found by the court will be referred to in the opinion.

■ 1. It is first contended by appellant that chapter 128 of the New Mexico Session Laws of 1927 (sections 90-1101 to· 90-1111 inclusive, N.M.St.Ann.1929) confers no authority upon the school district to issue refunding bonds for the purpose· of sale as in this case. As we understand, "refund," in the sense used, means to fund again; or to again provide funds for the payment of a debt. Section 6 of the Act (section 90-1106, N.M.St.Ann.1929) provides: "All such refunding bonds may be· exchanged dollar for dollar for the bonds, to be refunded, or they may be sold as di-- rected by the governing body, and the proceeds thereof shall be applied only to the purpose for which said refunding bonds were issued." There is no merit in this· contention.

■ 2. The act is not void because it authorizes the issuance of refunding bonds that may be in excess of 6 per cent. of the assessed valuation of the taxable property within such school district,·shown by the general assessment preceding their issuance, as running counter to section 11, article 9 of the Constitution. Sections 11 and 15 of article 9 of the Constitution are· as follows:

"Sec. 11. No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds, and in such cases only when the proposition to create the debt shall have been submitted to the· qualified electors of the district, and approved by a majority of those voting thereon. No school district shall ever become· indebted in an amount exceeding six per· centum on the assessed valuation of the·

taxable property within such school district, as shown by the preceding general assessment."

"Sec. 15. Nothing in this article shall be construed to prohibit the issue of bonds for the purpose of paying or refunding any valid state, county, district, or municipal bonds and it shall not be necessary to submit the question of the issue of such bonds to a vote as herein provided."

Reading them together, as suggested by appellant, we find that section 11 does not apply to refunding bonds, so specifically stated in section 15 of article 9. When the original bonds were issued the assessed value may have been much in excess of that of 1927. If the bonds were issued to refund valid obligations (and the validity of the original issue is not questioned), it is immaterial that the bonded debt of the district exceeded 6 per cent. of the assessed value at the time the refunding bonds are issued.

3. It is claimed that the appellant is not estopped by the recitals in the bond for the reason that such estoppel does not apply where the law requires public records to be made of the proceedings, and the recital in the bond is proven false by the public records.

If the municipality had authority to issue the bonds at all and the facts authorizing their issue are certified in the bonds, the district is estopped to deny such facts. Board of Com'rs of Gunnison County v. E. H. Rollins & Sons, 173 U.S. 255, 19 S.Ct. 390, 43 L.Ed. 689; Board of Com'rs of County of Chaffee v. Potter, 142 U.S. 355, 12 S.Ct. 216, 35 L.Ed. 1040. But if the statute requires a public record to be kept which contradicts the recitals in the bond, the rule does not apply, and the district is not estopped to contradict the recitals in the bonds by the record. Sutliff v. Board of County Com'rs, 147 U.S. 230, 13 S.Ct. 318, 37 L.Ed. 145. See, generally, annotation entitled "Estoppel by Recitals in Municipal Bonds as to Lawfulness of Issue," 86 A.L.R. beginning at page 1057 and particularly the title "Estoppel as to Refunding Bonds," beginning at page 1093. The question is whether records were required to be kept which would contradict the recitals in the face of the bonds. The statutes authorizing the negotiation of these bonds are the following sections from N.M.Stats.1929 Ann.:

90-1106. "All such refunding bonds may be exchanged dollar for dollar for the bonds to be refunded, or they may be sold as directed by the governing body, and the proceeds thereof shall be applied only to the purpose for which said refunding bonds were issued. Such refunding bonds shall not be issued until the outstanding bonds to be refunded have been called in and cancelled in an amount equal to or in excess of the refunding bonds to be issued; and all accrued interest on any such bonds to be refunded shall be paid before such refunding bonds are issued."

90-1107. "The governing body of any county, municipality, or school district, is-

suing bonds under this act shall keep a record thereof in a book to be kept for that purpose, showing the date, number, amount and maturity of such bonds and all payments of interest or principal of any such bonds."

90-1108. "All such refunding bonds paid and retired shall be burned and destroyed by the governing body which retires the same, and a record of such destruction and the number and amount of bonds destroyed shall be entered on the records of such governing body."

90-1109. "Upon the surrender of any bonds refunded under the provisions of this act, there shall be entered on the records of the governing body to whom surrendered the fact of such surrender and the number, amount, date and character of the bonds so surrendered; and such bonds shall be destroyed by such governing body and the fact of such destruction shall be likewise entered on such record."

A number of the questions arising in this case were before the United States Circuit Court of Appeals for the Tenth Circuit in Board of Education, etc., of Torrance County v. W. O. W., 77 F.(2d) 31, 33, a case appealed from the United States District Court for the District of New Mexico. The facts of that case are substantially the same as this. The proceedings of the two boards are identical, and the swindle was perpetrated by the same purchaser in the same manner in each case. It was contended there, as here, that the statute required the cancellation of the original bonds and a record made of the cancellation, the bonds burned and a record made of their destruction, before the refunding bonds could be issued. The school board in that sale made a certificate which, from statements in the opinion, must have been in substance the same as the one made and delivered to the purchaser of the bonds involved here from which we copy the following: "It is hereby certified by the undersigned, the duly elected, qualified and acting President, Clerk and Treasurer of the Board of Education of the Village of Lovington, Lea County, New Mexico, that on the 11th day of June, A. D., 1928, they executed the negotiable coupon bonds of Board of Education for and on behalf of School District No. 1, Lea County, New Mexico, consisting of Eighty Four (84) bonds in the denomination of Five Hundred Dollars ($500) each, dated July 1, 1928; that on the 11th day of June A. D., 1928 they delivered said executed bonds to United States Bond Company of Denver, Colorado, receiving in exchange therefor bonds of School District No. 1, of Lea County, New Mexico in the sum of Forty Two Thousand ($42,000) dated July 1, 1918, optional July 1, 1928, and due July 1, 1948, bearing interest at the rate of six per centum (6%) per annum; that such exchange was made dollar for dollar in such manner that the total outstanding indebtedness of said School District No. 1, was not increased and that after such change said bonds dated July 1, 1918 were cancelled and destroyed."

The court in that case stated:

"Appellant contends that these sections require that the refunded bonds must be canceled, a record of the cancellation made, the bonds destroyed, and a record thereof made, before the refunding bonds are issued. With that view we are not in accord. The statute provides four steps to be taken by defendant with regard to the called bonds: (1) Called in and canceled, (2) Record of such cancellation, (3) Destruction, and (4) Record of the destruction. The last three steps are covered by section 90-1109 which is the third section after the section (90-1106) authorizing the sale or exchange of the refunding bonds. The arrangement of the entire statute is chronological. More significant still is the fact that section 90-1106 authorizing sale or exchange makes step (1) a condition precedent to issue but does not make steps (2), (3), or (4), conditions precedent. To accede to appellant's argument, we must rewrite section 90-1106, by adding thereto the words nor until a record has been made of the bonds so called and canceled, and such bonds have been destroyed and a record of such destruction made.'

"The section authorizing the sale or exchange of the bonds does not prohibit their issue until such records have been made. They may be issued when the called bonds have been canceled; it was the duty of the officers to cancel the bonds called in, and since such cancellation was essential to the validity of the new issue, they were empowered to certify to such fact. They have so certified; plaintiff purchased in reliance on that certificate, and the defendant is now estopped to assert its falsity. * * *

"It may be feasible, as argued, to call the old bonds in to a fiscal agency or an escrow agent, and cancel them concurrently with the delivery of the refunding bonds. But the bonds must be burned by the governing body of the municipality, and the legislature undoubtedly realized that bondholders could not be compelled to send their bonds in and see them burned, trusting to officials thereafter to issue other bonds to them. The legislature did not so enact, and we find nothing in the statutes indicating such intent.

"Since the statute requires no public record of the cancellation, nor that the bonds be destroyed, prior to the issuance of the refunding bonds, such acts are not conditions precedent to the issuance of the bonds. The condition precedent of cancellation was certified by the duly constituted officers of defendant, empowered to cancel and, by necessary implication, to certify thereto. In this view of the case it is unnecessary to decide whether the 'records of such governing body' disclose the facts required by the statute. The refunding bonds were recorded in the 'Bond Registry; that record discloses that the 1920 issue had been refunded by the new issue. The bond resolution and the certificate of destruction of the bonds do not appear in the official minutes of the board; in fact, such minutes appear to be fragmen-

tary'; whether the board retained a copy of the transcript of the bond resolution and the certificate of destruction among its records is not clear."

We likewise hold it could not have been intended that the old bonds should be canceled, burned, and a record made thereof before the new bonds were issued because the holders could not be expected to permit their securities canceled and burned with only the promise of the board to deliver the bonds or money in payment. In fact, the statute provides that the refunding bonds could be issued and delivered after the old bonds had been delivered and canceled, and this was so certified to by the board as having been done. Appellant is estopped to deny such delivery and cancellation of the old bonds, as the law imposed upon it the duty to cancel, which it certified was done.

4. Section 90-1104, N.M.Stats.Ann. 1929 provides: "A certified copy of the ordinance and resolution required by this act shall be immediately transmitted to the state tax commission and such bonds shall not be issued until such commission shall have approved the issuance, form, and rate of interest on said bonds. The action of the state tax commission shall be entered on the minutes of that commission."

The approval of the state tax commission is in the following language:

"The Commission having before it the transcript of the proceedings taken by the Board of Education of Lovington, S. D. No. 1, Lea County, State of New Mexico, relating to the issuance of Refunding Bonds of School District No. 1, in the sum of $42,000.00 to retire a like amount of outstanding bonds, now optional for payment, and having examined said transcript, finds that the proposed issue of Refunding Bonds can be legally made as provided by law and that the procedure as outlined in said transcript is according to law, therefore,

"It is ordered that the said proposed issues of $42,000.00 Refunding Bonds be and the same hereby approved."

It had before it a certified copy of the resolution required as a basis for issuing the bonds, which contained the form of the bond in which appeared the rate of interest. If it approved the issuance of the bonds, necessarily it approved its form and rate of interest unless something to the contrary appeared in the record. The bonds were approved as to issuance, form, and rate of interest by the state tax commission.

5. Section 90-1103, N.M.Stats.Ann. 1929, provides that these refunding bonds "shall be executed in the name of the county, municipality, or school district, signed by the chairman or president of the governing body, countersigned by the county or municipal treasurer or by the treasurer of the school district, if it has such a treasurer, sealed with the seal of the county, municipality, or school district and attested by the county, municipality, or school district clerk or secretary."

The bonds read: "The Board of Education of the Village of Lovington, State of New Mexico and School District No. 1 of Lea County, for value received, hereby acknowledges itself indebted and promises to pay to the bearer the sum of Five Hundred Dollars in gold coin of the United States of America, of or equal to the present standard of weight and fineness."

The above section of the statute should be read in connection with section 120-906 which provides that municipal boards of education shall have the same powers and duties respecting their districts and schools as are possessed by county boards of education; and section 120-801 which provides that county boards of education "shall have power as such to sue and be sued, contract and acquire and dispose of school property pursuant to law." The board of education is the governing body with authority to contract. To be safe, these bonds were executed both in the name of the district and the board of education. This complied with the requirements of the statute.

6. The fact that the statute (section 90-1103, N.M.Stats.Ann.1929) provides that such bonds should be payable in "gold coin or its equivalent in lawful money," and the bonds are payable "in gold coin of the United States of or equal to the present standard of weight and fineness" does not invalidate them. We think the two are of identical meaning, but irrespective of this, since Norman v. Baltimore & Ohio Ry. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L. Ed. 885, 95 A.L.R. 1352, and other so-called "gold cases" decided by the Supreme Court of the United States (Nortz v United States, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346 and Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L. Ed. 912, 95 A.L.R. 1335), we must hold with that court, that all so-called "gold clauses" in contracts are invalid under the joint resolution of Congress of June 5, 1933, 48 U.S.Stats. at Large, 112 (31 U.S.C.A. §§ 462, 463), and such contracts are payable in lawful money of the United States.

7. There is no merit to the contention that the resolution authorizing the issuance of the bonds fails to comply with section 90-1102 in that it does not "set out the facts making the issuance of such refunding bonds necessary or advisable." It sets out that the old bonds bear 6 per cent. interest and "Whereas, under the laws of the State of New Mexico, said bonds may be refunded by the issuance of bonds bearing a lower rate of interest, thereby effecting a substantial saving, manifestly to the advantage of said School District."

8. The purchaser of the bonds must take notice of this resolution, as it was a condition precedent to the issuance of the bonds; but the fact that it was not spread upon the minutes does not invalidate the bonds unless so provided by the statute. City of Weslaco v. Porter et al. (C.C.A.) 56 F.(2d) 6; 43 C.J. Title Municipal Corporations, § 837.

. Other questions are raised, but they are manifestly without merit.

As stated in Board of Education, etc., v. Woodmen of the World, supra: "Defendant selected the United States Bond Company as its escrow agent to accomplish the exchange of these bonds. It equipped its agent with fully executed negotiable bonds and a certificate of its officers which enabled its agent to put the bonds in circulation. The certificate was false, its agent untrustworthy. The District, and not an innocent person who paid value in reliance upon the possession of the bonds and the certificate, should stand the loss."

The judgment of the District Court is affirmed, and the cause remanded.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.