102 P.2d 25

**HENNING v. TOWN OF HOT SPRINGS.**
No. 4437.

Supreme Court of New Mexico.

June 14, 1939.

On Rehearing April 20, 1940.

E. L. Medler, of Hot Springs, for appellant.

C. R. McIntosh, of Santa Fe, amicus curiæ for appellant.

Coors & Adams and Quincy D. Adams, all of Albuquerque, for appellee.

Wilson & Watson, of Santa Fe, amici curiæ for appellee.

BRICE, Justice.

The question is whether the appellant, Town of Hot Springs, is liable as conditional payor on certain sewer certificates issued by it, as provided by Secs. 90-2301, to 90-2308, inclusive, of N.M.Sts.Ann.1929.

Each of the certificates provide in substance that the Town of Hot Springs, for value received, promises to pay to the bear-

er $500 at a specified date, with interest at six per cent per annum, and further:

"This certificate shall be payable from money received from special assessments levied to pay for sewer improvements, but any deficiency in the fund to pay this certificate or the interest thereon shall be paid from the general revenues of said municipality.

"This certificate is issued for the purpose of paying the cost of constructing sewer improvements in the said town under and by virtue of Sections 3705 to 3712, inclusive, of the New Mexico Statutes, Codification 1915, and all other laws of the State of New Mexico thereunto enabling, and it is hereby certified and recited that all requirements of law have been fully complied with by the officers of said town in the issuance hereof, and that all proceedings and things with reference to making said improvement, to the fixing of the assessment lien against the property improved, and the issuance of this certificate, have been lawfully taken and performed, and that said town has agreed to collect and enforce the payment of said special assessments, and in the event it becomes necessary to foreclose the lien of such certificates to do so at the expense of the said town."

As we view it, every question presented in this case is settled by City of Santa Fe v. First National Bank in Raton, 41 N.M. 130, 65 P.2d 857. Appellant and amici curiæ insist, however, that there is a vital question in this case, not presented or decided in the Santa Fe case, which is stated in the brief of amici curiæ, as follows: "In this case, it will not be questioned that the promise in the securities in suit to pay deficiencies from general revenues was an attempt to create a municipal debt, in the constitutional sense; nor questioned that if such promise was not preceded by the required election, the promise and the debt were void. Our position is that the omission to hold the election, attempted to be asserted here as a defense, *is a fact not in this case,* and which can never get in; for, by recitals in the securities, legally importing that such election was held, Appellant municipality is estopped from asserting the contrary."

Amici curiæ agree, and we have held (City of Santa Fe v. First National Bank, supra), that these sewer certificates are debts within the meaning of Sec. 12 of Art. 9 of the Constitution of New Mexico, which is as follows: "No city, town or village shall contract any debt except by an ordinance, which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, and which shall specify the purposes to which the funds to be raised shall be applied, and which shall provide for the levy of a tax, not exceeding twelve mills on the dollar upon all taxable property within such city, town or village, sufficient to pay the interest on, and to extinguish the principal of such debt within fifty years. The proceeds of such tax shall be applied only to the payment of such interest and princi-

pal. No such debt shall be created unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, have been submitted to a vote of such qualified electors thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall have voted in favor of creating such debt."

Amici curiæ cite Southwest Securities Co. v. Board of Education, 40 N.M. 59, 54 P.2d 412, 415, in support of their plea of estoppel, in which we stated: "If the municipality had authority to issue the bonds at all and the facts authorizing their issue are certified in the bonds, the district is estopped to deny such facts. Board of Com'rs of Gunnison County v. E. H. Rollins & Sons, 173 U.S. 255, 19 S.Ct. 390, 43 L.Ed. 689; Board of Com'rs of County of Chaffee v. Potter, 142 U.S. 355, 12 S.Ct. 216, 35 L.Ed. 1040. But if the statute requires a public record to be kept which contradicts the recitals in the bond, the rule does not apply, and the district is not estopped to contradict the recitals in the bonds by the record. Sutliff v. Board of County Com'rs, 147 U.S. 230, 13 S.Ct. 318, 37 L.Ed. 145."

They cite Coler v. Board of County Com'rs, 6 N.M. 88, 27 P. 619, to the same effect.

Sec. 12 of Art. 9 of the Constitution confers no power upon municipalities to incur debts. It is a limitation upon such power and is not self-executing. Varney v. City of Albuquerque, 40 N.M. 90, 55 P.2d 40, 106 A.L.R. 222; Lanigan v. Town of Gallup, 17 N.M. 627, 131 P. 997.

If the Town of Hot Springs is liable to such certificates, we must find statutory authority therefor consistent with Sec. 12 of Art. 9 of the State Constitution. These statutes, so far as material to a decision of this case, are as follows:

"Whenever it shall be necessary and proper in the opinion of the city council or board of trustees of any municipality in this state, * * * to have constructed and maintained a sewer or sewers in said municipality, * * * they shall, by resolution, entered of record, declare the same, and shall cause to be prepared by the city or town engineer, * * * a map of the proposed sewer district, together with the lots or pieces of land situate therein, * * and shall direct said engineer to make, under oath, and file the same with the city or town clerk, a carefully prepared estimate of the approximate cost of said sewer or sewers, and upon the filing of said estimate, said city council or board of trustees shall elect what portion, in whole or in part, of the cost of said construction shall be paid from the general revenues of the city or town, or what portion, in whole or in part, shall be assessed against the lots and pieces of land situate in said sewer district and abutting on the line of said sewer or sewers * * *, benefited by the construction of said sewer or sewers, with the power of issuing bonds to realize money to pay for

the construction of said sewer or sewers, in whole or in part." Sec. 90-2301, N. M. Sts.1929, Ann.

"If said city council or board of trustees shall elect to assess against said lots and pieces of land abutting on said line of sewer or sewers, * * * a part or all of the cost of such construction, they shall record the amount so elected to be so assessed and shall proceed to apportion said amount among said lots and pieces of land, according to the frontage thereof, so that each front foot of such lots and pieces of land shall pay its proportionate share of the total cost of such construction, and shall assess such amount so determined against each of such lots and pieces of land, * *." Sec. 90-2302, N.M.Sts.1929, Ann.

Provision is made by Sec. 90-2304, N.M. Sts.1929, for the delivery of a certified copy of the assessment against the benefited property, to the County Assessor, by him to be entered on the assessment book; from which time such an assessment shall be and become a lien on the lots of land respectively on which the assessments had been made. It further provides that the full amount of the assessments shall be enforced and collected in the manner provided by law for the collection of taxes against real estate.

"Said assessments may be made payable in ten annual payments. * * * Interest at a rate not to exceed six per cent. per annum, in the discretion of said city council or board of trustees, shall be charged upon any balances or amounts not paid when the same are due. * * * The said city council or board of trustees are hereby authorized to issue certificates to be designated 'sewer certificates,' to the amount of such assessment, running for a period of eleven years, and payable in equal annual installments from and after the date of the issuance thereof. Such certificates shall be issued for convenient amounts, shall be negotiable in form and shall bear interest from date at the rate not to exceed six per cent. per annum, in the discretion of said city council or board of trustees. Said certificates shall be issued to the person or persons entitled to receive the same and shall state that they are issued in payment for the construction of said sewer or sewers. They shall be payable from money received from the assessments above provided for, and any deficiency in the fund to pay said certificates shall be paid from the general revenues of said municipality, and said certificates may be redeemed at the option of the municipality issued them at any time before maturity." Sec. 90-2305, N.M.Sts.1929, Ann.

The provision in Sec. 90-2301 of the statute, which empowers cities and towns to issue bonds "to realize money to pay for the construction of said sewer or sewers, in whole or in part", has reference to the whole, or a definite and fixed portion of the cost of construction of sewers, separate and apart from that assessed against the benefited property. It has no reference to sewer certificates like those in suit, provided for by Sec. 90-2305 of the statutes.

For the purpose of a decision of this case, we will assume that the governing board of the town had general authority to submit the question of the incurring of debts represented by certificates or bonds to the interested electorate for approval (a question we need not decide), and, that if the town authorities were authorized to issue the certificates in suit *at all*, that the appellant is estopped by the recitals in the certificates to deny that they were issued with the approval of the electorate as the Constitution requires.

■ The vice in appellee's argument is the assumption that the town governing board had authority *at all* to issue such certificates as a debt against the town. Sec. 12 of Art. 9 of the state Constitution not only prohibits the incurring of any debt unless submitted to a vote of the interested electorate, but prohibits cities and towns from incurring any debt except by an ordinance "which shall provide for the levy of a tax * * * sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years." Manifestly this could not be done if the liability to pay is contingent upon circumstances that may never arise, or if they should arise, then the amount of the debt could not be determined until due and payable. Such debt must be fixed, definite and certain in amount at the time it is incurred.

This conclusion is decisive and renders unnecessary the consideration of other questions presented and ably argued by counsel.

The cause is reversed and remanded with instructions to enter judgment for appellant. It is so ordered.

BICKLEY, C. J., and ZINN, SADLER and MABRY, JJ., concur.

## On Rehearing

BRICE, Justice.

It is asserted with much earnestness by appellee that this court erred in the original opinion in holding that the certificates in question were invalid because the Town of Hot Springs had no authority to issue them, and cited Lanigan v. Gallup, 17 N.M. 627, 131 P. 997, 1002, as supporting this contention.

In the Lanigan case this court construed Sec. 12 of Art. 9 of the Constitution together with Sec. 13 of the same article, which is as follows: "No county, city, town or village shall ever become indebted to an amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such county, city, town or village, as shown by the last preceding assessment for state or county taxes; and all bonds or obligations issued in excess of such amount shall be void; provided, that any city, town or village may contract debts in excess of such limitation for the construction or purchase of a system for supplying water, or of a sewer system, for such city, town or village."

We held that, as there was no constitutional limitation on the amount the town

of Gallup could become indebted for the purchase or construction of a water supply system as provided in Sec. 13 of Art. 9, necessarily the limitation on tax levies of 12 mills on the dollar, as provided by Sec. 12 of Art. 9, could not apply to a debt for the construction or purchase of a water supply or sewer system.

Chief Justice Roberts, speaking for the court, said among other things:

"The phraseology used in sections 12 and 13, supra, is practically the same as that found in section 8 of article 11 of the Colorado Constitution. The provisions of sections 12, and 13 of article 9 of the New Mexico Constitution are covered by the one section of the Colorado Constitution. In the Colorado Constitution the tax-levying power is fixed at twelve mills, and the limit of indebtedness at any one time is fixed at 3 per cent. of the valuation, etc. Provisions as to the election are identically the same. The exemption of the application of such limitations to water purposes in the Colorado Constitution is found in the following language:

" 'Debts contracted for supplying water to such city or town are excepted from the operations of this section.'

"This language not only exempts such debts from the operation of the limitations as to the total amount and the 12-mill provision, but likewise exempts said debts from the operation of all the other provisions of the section, so that such debts may be contracted without the submission of the question to a vote of the people and the remaining safeguards thrown around the creation of other debts. The framers of the Constitution of New Mexico evidently intended to remove the limitation as to the amount of indebtedness that could be contracted for such purposes, and to leave the remainder of the section requiring a vote of the electors, etc., in full force."

In no place in the opinion is it suggested that all of Sec. 12 except the words "not exceeding twelve mills on the dollar" does not apply to debts contracted for the building or purchasing of water works and sewer systems. Regarding the object of requiring the ordinance and a limitation upon the tax levy, it was stated in that opinion: " * * * The carefully framed provision of section 12, requiring the ordinance whereby a debt is contracted by a municipality to 'provide for the levy of a tax, not exceeding 12 mills on the dollar, * * * sufficient to pay the interest on, and extinguish the principal of, such debt,' was inserted with the *object of providing against the repudiation by a municipality of the indebtedness incurred by the ordinance,* and to fix a limitation upon the amount of a single debt for purposes not excepted from its operation."

As we understand, the "safeguards" of Sec. 12 mentioned by Chief Justice Roberts are:

(1) That debts shall be contracted only by an irrepealable ordinance, etc.

(2) That said ordinance shall; (a) specify the purposes for which the funds to be raised shall be applied; (b) provide for the

levy of a tax upon all taxable property, etc., sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years; (c) the tax shall not exceed 12 mills on the dollar.

(3) The proceeds of such tax shall be applied only to the payment of such interest and principal.

(4) No debt shall be created unless the question of incurring the same shall be submitted to a vote of the qualified electors, etc.

The effect of the Lanigan decision is, that only that part of sec. 12 which conflicts with the proviso of sec. 13 is inapplicable to a debt contracted for the purpose of building or purchasing sewer or water works systems; and that all other safe-guards apply to such debts. That was the effect of the following language: "The framers of the Constitution of New Mexico evidently intended to remove the limitation as to the amount of indebtedness that could be contracted for such purposes, and to leave *the remainder of the section requiring a vote of the electors, etc., in full force.*"

■ We hold, therefore, that Sec. 12 of art. 9 of the State Constitution provides that no debt in the constitutional sense should be incurred *for any purpose* except by an irrepealable ordinance specifying the purposes to which the funds to be raised shall be applied, and which shall provide for the levy of a tax upon all taxable property within such city, town, or village, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years.

We stated in State v. Connelly, 39 N.M. 312, 46 P.2d 1097, 1101: "We reach the same conclusion in the case before us. While it is true that in Seward v. Bowers [37 N.M. 385, 24 P.2d 253] we were concerned with the intended meaning of the word 'debt' as found in article 9, § 12, while here it is its meaning as employed in section 8 of the same article, we are convinced that the term is used in the same sense in each section, viz., as comprehending a debt pledging for its repayment the general faith and credit of the state or municipality, as the case may be, and contemplating the levy of a general property tax as the source of funds with which to retire the same."

If there is a deficiency which, under the terms of the certificates, the town has bound itself to pay, the only possible means of payment is by funds secured from the levy of a general property tax. The certificates are therefore debts in the constitutional sense, regarding which the parties are in agreement.

■ But appellee contends that even though an irrepealable ordinance specifying the purposes of the debt in question is required, and that such ordinance must provide for the levy of a tax upon all taxable property of the town of Hot Springs, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years, that the certificates are consistent with this provision of the Constitution.

That, therefore, we erred in holding such tax levy could not be made consistently therewith, if the liability to pay is contingent upon circumstances that may never arise; or if they should arise, then the amount of the debt could not be determined until due and payable.

We cannot better state appellee's position on this question than by quoting the following excerpts from her brief: "* * * It would be quite feasible for the town at the time of issuing the sewer certificates to levy a tax sufficient to pay the entire amount of principal and interest within fifty years, provide that the taxes so collected be placed in a reserve or sinking fund, and disbursed to certificate holders in amounts sufficient to make good such deficiency as might result from the failure to collect special assessments if, as and when such deficiency might occur, the balance, if any, existing after all certificates have been paid to be used for ordinary governmental purposes of the town."

But said sec. 12 provides: "The proceeds of such tax shall be applied only to the payment of such interest and principal." The suggested tax would be unauthorized because, (a) levied to pay a debt that did not exist, and might never exist, and (b) the funds so obtained could not be used for general city purposes.

■ It is also suggested, "* * * It would seem, therefore, that the enabling ordinance might constitutionally provide that at the end of each year while the certificates are outstanding, the deficiency in collection of special assessments should be determined and a tax imposed at a sufficient rate to make good such deficiency."

It is apparent that by the terms of the certificate the town is only secondarily liable thereon; that the "deficiency" mentioned is that which remains unpaid after all funds which could be obtained from the special assessments by collection, foreclosure or otherwise, had been applied to the payment of the debt. If the suggested action were taken the city would be annually taxed to pay a debt of the property owners, though there might not be a deficiency after the application of all assessments collectible to the debt. If a deficiency should ultimately appear, it would be after funds of the town had been applied to the debt.

■ A third suggestion of appellee is: "It would seem to us that the most reasonable and practicable method of providing for the levy of a tax would be to simply provide that when a deficiency occurs the amount of the deficiency should be included in the town's budget upon which the levy for municipal taxes is based. This *in effect* is done by providing that the deficiency shall be paid out of 'general revenues.' The 'general revenues' of a municipality are derived from the levy of taxes on property in the municipality. It follows, then, that the deficiency is to be paid from the proceeds of a tax levy and that in case of a deficiency a tax levy must be made. Why is is necessary to be any more explicit? What more does the Constitution require?"

We stated in Seward v. Bowers, 37 N.M. 385, 24 P.2d 253, regarding such debts: "The idea of a 'debt' in the constitutional sense is that an obligation has arisen out of contract, express or implied, which entitles the creditor *unconditionally to* receive from the debtor a sum of money, which the debtor is under a legal, equitable, or moral duty to pay *without regard to any future contingency.*" (Emphasis ours)

That is, that the amount of the debt necessarily must be "fixed, definite and certain," otherwise its payment could not be provided for by an ordinance "which shall provide for the levy of a tax * * * upon all taxable property * * * sufficient to pay the interest on, and to extinguish the principal of such debt within fifty years."

It is quite apparent that such holding would overrule Seward v. Bowers, supra. The liability of the town is conditioned upon their being a deficiency, and the duty and obligation of the town to pay any part of the debt depends upon that future contingency.

The obligation of appellant to pay the deficiency could not arise until after the certificates were due and the deficiency ascertained; and when ascertained the appellant would become liable to pay. But a tax could not be levied prior to the ascertainment of the deficiency, which would subject appellant to suit before means of payment could be obtained. Sec. 12 of Art. 9 of the Constitution provides in effect that funds must be obtained in the manner therein specified so that the debt can be paid when it becomes due.

We are satisfied that said Sec. 12 of Art. 9 inhibits cities, towns and villages from entering into contracts which would, or might, create obligations resting upon future contingencies, and the amount of which is not fixed, definite and certain at the time the contract is made; that is, which does not entitle "the creditor unconditionally to receive from the debtor a sum of money, which the debtor is under a legal, equitable, or moral duty to pay without regard to any future contingency." Seward v. Bowers, supra. We adhere to our original conclusion that the certificates are void as to appellant and the order of reversal will stand.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.